Daniel G. Bogden
United States Attorney
Patrick Burns
Assistant United States Attorney
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702)388-6336

Attorney for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | **SUPERSEDING INDICTMENT** |
| Plaintiff, | 2:16-cr-57-LRH-VCF |
| v. | |
| Jihad Anthony Zogheib, | Wire Fraud—18 U.S.C. § 1343 |
| Defendant. | Money Laundering—18 U.S.C. § 1957 |

**THE GRAND JURY CHARGES THAT:**

### Counts One through Eight
### (Wire Fraud)

1. From in or about 2010, to in or about 2013, in the State and Federal District of Nevada,

**Jihad Anthony Zogheib,**

defendant herein, did devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises.

2. The objective of the scheme and artifice was for Zogheib to fraudulently obtain money from people by falsely and fraudulently representing to them that he would use their money for business purposes when he then and there

1  well knew he would use the money for his personal use.  Allegations pertaining to
2  some of the people from whom Zogheib fraudulently obtained money as part of the
3  scheme and artifice are set forth below.

4  **K.L.**

5  3.  Zogheib falsely represented to K.L. that he had millions of dollars at
6  his disposal and would invest some of that money in a mobile crane business with
7  K.L.

8  4.  On or about February 24, 2011, Zogheib signed and caused K.L. to sign
9  a Letter of Intent stating that, among other things: (1) Zogheib and K.L. would form
10 a mobile crane company and a mobile crane leasing company; (2) Zogheib would
11 fund the mobile leasing company with up to $10 million dollars; (3) K.L. would pay
12 Zogheib $280,000; (4)  Zogheib would wire $180,000 to a crane company for as a
13 deposit; and (5) Zogheib would pay to another company the balance owed on another
14 crane.

15 5.  Additionally, Zogheib falsely represented to K.L. that the United
16 States government had placed a hold on the millions of dollars held in an overseas
17 account and that if K.L. provided Zogheib with money, Zogheib would use it to
18 satisfy the hold.

19 6.  Relying on Zogheib's materially false and fraudulent representations,
20 on or about February 24, 2011, K.L. sent $280,000 to Zogheib, and on or about
21 February 25, 2011, K.L. sent $268,000 to Zogheib.

22 7.  Zogheib presented to K.L. a fictitious document claiming that he had
23 transferred $180,000 to a crane company from an account that held more than $3.3
24 million when Zogheib then and there well knew he had not transferred the money
25 and the account did not hold the more than $3.3 million.

8. On or about the same day Zogheib received the $280,000 from K.L., he obtained and caused to be obtained a cashier's check in the amount of $250,000 and negotiated it at a local casino.

9. On or about the same day Zogheib received the $268,000 from K.L., Zogheib caused a cashier's check to be obtained in the amount of $253,000 and used it to partially repay victim, K.W. money he had fraudulently obtained from K.W.

**K.W.**

10. From in or about November 2010 to in or about February 2011, Zogheib solicited K.W. to invest in Zogheib's real estate business, claiming to be in the business of flipping real properties.

11. Relying on these and other materially false and fraudulent representations, Zogheib caused K.W. to give him a total of approximately $1,040,000 on five separate occasions.

12. On or about February 25, 2011, Zogheib paid K.W. $253,000 Zogheib had obtained by fraud from K.L, as stated above.

13. On or about April 4, 2011, Zogheib sent and caused to be sent an email to a law office in which he forwarded an email he had purportedly received from a financial institution, which email represented that Zogheib would be receiving more than $6 million dollars within 30 days. Zogheib then and there well knew the email he purportedly forwarded to the law office was materially false and fraudulent. Zogheib sent this email to the law office for the purpose of lulling K.W. into believing that Zogheib's business activities were legitimate, concealing his scheme and artifice from K.W., and deterring K.W. from taking further action against him.

14. On or about May 10, 2011, Zogheib sent to K.W. another fictitious email he claimed to have received from another financial institution purportedly showing that Zogheib had received more than $6 million dollars and that the money would be available after Zogheib paid a transfer tax. Zogheib also sent and caused

3

to be sent this email to K.W. for the purpose of lulling K.W. into believing that Zogheib's business activities were legitimate, concealing his scheme and artifice from K.W., and deterring K.W. from taking further action against him.

**P.N.**

15. From in or about March 2013 to in or about August 2013, Zogheib solicited P.N. to invest in Zogheib's real estate business, falsely claiming to be in the business of flipping real properties. Zogheib made materially fraudulent representations to P.N. that Zogheib had won bids for and had in escrow numerous real properties. Zogheib further falsely represented to P.N. that P.N. could invest in the purchase and rehabilitation of those properties, and P.N. would receive a split of the profits when the real properties were sold.

16. Relying on these and other materially fraudulent representations, Zogheib caused P.N. to give him a total of approximately $367,475 on four separate occasions.

17. On or about April 4, 2013, Zogheib emailed P.N. and P.N.'s agents a signed promissory note containing a materially false promise by Zogheib to use $100,000 provided by P.N. to invest in real estate. Zogheib then and there knew that his promise was false and he intended to use the money for purposes other than real estate investment. In reliance on Zogheib's materially false representations, P.N. provided Zogheib a cashier's check for $100,000

18. In or about, April 2013, Zogheib knowingly made additional fraudulent material misrepresentations to P.N., claiming that Zogheib had additional real properties P.N. could invest in. Zogheib then and there knew that his representations were false and that he intended to use the money for purposes other than real estate investment. In reliance on those materially false misrepresentations, P.N. provided two wire transfers of money to Zogheib: (1) an

April 15, 2013, $65,000 wire transfer to an account controlled by Zogheib; and (2) an April 16, 2013, $120,000 wire transfer to an account controlled by Zogheib.

19. In or about June 2013, in order to fraudulently obtain additional money from P.N., to lull P.N. into believing that Zogheib's business activities were legitimate, to conceal his scheme and artifice from P.N., and to deter P.N. from taking further action against him, Zogheib knowingly and with the intent to defraud P.N. sent emails containing false and fictitious documents relating to Zogheib's purported business activities.

20. On or about June 23, 2013, Zogheib, knowing that it was materially false and fictitious, emailed P.N. and P.N.'s agents a list of real properties that Zogheib materially and fraudulently represented to have been won by him at auction and invested in with P.N.'s money. Zogheib fraudulently represented that if P.N. gave additional money to Zogheib, P.N.'s previously invested money could be released and returned to P.N. Zogheib then and there knew that his representations were materially false and fraudulent and he intended to use the money for purposes other than obtaining the return of P.N.'s money.

21. On or about June 25, 2013, Zogheib forwarded an email to P.N. and P.N.'s agents containing a purported email from "CJ Lillo" of auction.com, in which "CJ Lillo" confirmed $550,000 would be released from escrow into an account established by Zogheib. Zogheib then and there knew that the email was false and fictitious. Zogheib further made material misrepresentations that P.N.'s previously invested money would be returned if P.N. provided additional money to Zogheib. In reliance on Zogheib's materially fraudulent representations, P.N. sent a wire transfer of $82,475 to an account controlled by Zogheib.

22. On or about the dates set forth below, for the purpose of executing the scheme and artifice, Zogheib did transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals,

5

pictures, and sounds, that is the items described below, with each wire communication constituting a separate violation of 18 U.S.C. § 1343.

| Count | Date | Description |
|---|---|---|
| 1 | 2/24/11 | $280,000 Wire Transfer from Bank of America (NY) to JP Morgan Chase (WA) |
| 2 | 2/25/11 | $268,000 Wire Transfer from US Bank (NV) to JP Morgan Chase (WA) |
| 3 | 2/25/11 | Email from Zogheib to attorney forwarding fictitious bank record showing that transfer of $180,000 was scheduled to a crane company from an account with a balance of more than $3.3 million. |
| 4 | 4/4/11 | Email from Zogheib to a law office via gmail.com, forwarding the fictitious email from a financial institution dated 4/1/11. |
| 5 | 5/10/11 | Email from Zogheib to K.W. via gmail.com, forwarding the fictitious email from a financial institution dated 5/10/11. |
| 6 | 4/15/13 | $65,000 wire transfer from City National Bank (CA) to Mountain America Credit Union (UT) |
| 7 | 4/16/13 | $120,000 wire transfer from City National Bank (CA) to Mountain America Credit Union (UT) |

| Count | Date | Description |
|---|---|---|
| 8 | 6/25/13 | $82,475 wire transfer City National Bank (CA) to Mountain America Credit Union (UT) |

### Counts Nine and Ten
### (Money Laundering)

23.   The allegations set forth in Counts One through Eight are incorporated herein as if set forth in full.

24.   On or about the dates listed below, in the District of Nevada,

**Jihad Anthony Zogheib,**

defendant herein, did knowingly engage and attempt to engage in a monetary transaction by and through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, as described in each count below, such property having been derived from a specified unlawful activity, that is, wire fraud as that crime in defined in Title 18, United States Code, Section 1343.

In violation of Title 18, United States Codes, Sections 1957 and 2.

| Count | Date | Description |
|---|---|---|
| 9 | 2/24/2011 | Zogheib purchased a $250,000 cashier's check from a financial institution (and later negotiated it at a local casino) |
| 10 | 2/25/11 | Zogheib purchased and caused to be purchased a $253,000 cashier's check from a financial institution. |

### Forfeiture Allegation One
### (Wire Fraud and Money Laundering)

25. The allegations contained in Counts One through Ten of this Superseding Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c).

26. Upon conviction of any of the felony offenses charged in Counts One through Thirteen of this Superseding Indictment,

**Jihad Anthony Zogheib,**

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and 1957, specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offenses, an in personam criminal forfeiture money judgment including, but not limited to, at least $815,475 (property).

27. If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendant for the in personam criminal forfeiture money judgment including, but not limited to, at least $815,475.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) with Title 28, United States Code, Section 2461(c); Title 18, United States Code, Sections 1343 and 1957; and Title 21, United States Code, Section 853(p).

### Forfeiture Allegation Two
### (Money Laundering)

28. The allegations contained in Counts Nine and Ten of this Superseding Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) with Title 28, United States Code, Section 2461(c).

29. Upon conviction of any of the felony offenses charged in Counts Twelve and Thirteen of this Superseding Indictment,

**Jihad Anthony Zogheib,**

defendant herein, shall forfeit to the United States of America, any property, real or personal, involved in transactions or attempted transactions in violation of Title 18, United States Code, Section 1957, or any property traceable to such property, an in personam criminal forfeiture money judgment including, but not limited to, at least $503,000 (property).

30. If any property subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) with Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant-

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendant for the in personam criminal forfeiture money judgment including, but not limited to, at least $503,000.

All pursuant to Title 18, United States Code, Section 981(a)(1)(A) with Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 1957; and Title 21, United States Code, Section 853(p).

### Forfeiture Allegation Three
### (Money Laundering)

31. The allegations contained in Counts Nine and Ten of this Superseding Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

32. Upon conviction of any of the felony offenses charged in Counts Twelve and Thirteen of this Superseding Indictment,

**Jihad Anthony Zogheib,**

defendant herein, shall forfeit to the United States of America, any property, real or personal, involved in violations of Title 18, United States Code, Section 1957, or any property traceable to such property, an in personam criminal forfeiture money judgment including, but not limited to, at least $503,000 (property).

33. If any property subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant-

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendant for the in personam criminal forfeiture money judgment including, but not limited to, at least $503,000.

      All pursuant to Title 18, United States Code, Section 982(a)(1); Title 18, United States Code, Section 1957; and Title 21, United States Code, Section 853(p).

DATED: this 30th day of March, 2016.

**A TRUE BILL:**

                                              /S/
                               GRAND JURY FOREPERSON

DANIEL G. BOGDEN
United States Attorney

*/s/ Patrick Burns*

PATRICK BURNS
Assistant United States Attorney