Randall J. Roske, Esquire
400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101
(702) 793-4211
e-mail: randallroske@yahoo.com
Attorney for Defendant
JIHAD A. ZOGHEIB

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*   \*   \*

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**JIHAD ANTHONY ZOGHEIB,**

Defendants.

CASE NO. : 2:16-cr-056-LRH-VCF-1

## MOTION FOR FAVORABLE EVIDENCE

COMES NOW, Defendant, Jihad Anthony Zogheib, by and through his attorney, Randall J. Roske, Esq., and submits his Motion to Obtain Exculpatory Evidence. This Motion is supported by the following Memorandum of Points and Authorities, Exhibits, and Declaration of Counsel.

DATED this 19th day of January, 2018.

Respectfully submitted,

/s/
Randall J. Roske, Esq.
Attorney for Jihad Anthony Zogheib

1
2
## MEMORANDUM OF POINTS AND AUTHORITIES
3
4
### I. THE FACTS
5
6       The Defendant, Jihad Anthony Zogheib,  is charged in a superseding indictment with eight
7   counts of wire fraud under 18 U.S.C. § 1343 (Counts 1, 2, 3, 4, 5, 6, 7, 8) and two counts of money
8   laundering under 18 U.S.C. § 1957 (Counts 9, 10). Docket No. 23. The original indictment was filed
9   February 23, 2016, and the superseding indictment was filed April 5, 2016. Docket Nos. 1, 23. Three
10  different "schemes" to defraud are represented in the superseding indictment, which alleges schemes
11  against three different victims at different times: K.L. (Counts 1, 2, 3); K.W. (Counts 4, 5); and P.N.
12  (Counts 6, 7, 8). On October 24, 2017, and October 31, 2017,  counsel for Mr. Zogheib requested the
13  government provide additional exculpatory discovery by two separate letters with specific targeted
14  requests. (Please see Exhibits A and B attached hereto). The request specifically outlined what
15  documents were being sought. *Id.* These requests were made with the assistance of Mr. Jeff Danik, a
16  retired FBI Supervisor, who had been authorized to assist in this case.  Mr. Danik after carefully
17  analyzing the discovery provided by the Government, identified what materials that in his opinion as a
18  former FBI Agent familiar with the internal operational guidelines that were either helpful to evaluate
19  the acquisition and retention of evidence by the FBI, or materials which would help undermine
20  credibility of the presently known witnesses against M. Zogheib. ( Please see **Exhibit D**, the
21  Curriculum Vitae of Jeff Danik). The government through its assigned prosecutor, never dignified the
22  Brady materials request with any written response until drafting a Joint Motion for Continuance
23  referencing Mr. Zogheib's apparent need to file motions to compel. (**Docket # 80**, page 3, lines14-17).
24  Please note that Mr. Zogheib's previous counsel had also asked the government to request Mr.
25  Zogheib's A-file as to comply with the requirements laid out in **Padilla v. Kentucky,** 559 U.S. 356
26  (2010). The government responded that they would not comply with this request since they were not
27  going to negotiate a resolution that would "help him [Zogheib] avoid immigration consequences."
28

1   These materials were never supplied to this author or to his previous counsel.

2        Pursuant to **Fed. R. Crim. P. 16(a)(1)(A)-(F),** Zogheib asks this Court to Order the

3   government to provide the materials identified in the **Exhibits "B" and "C"** attached hereto.

4   Counsel has followed up on the Brady material request with the assigned prosecutor about the

5   sufficiency of counsels efforts to "meet and confer," only to be advised to go ahead and file the

6   instant Motion (See Declaration of Counsel **Exhibit A**).  The Defendant submits the following

7   would be exculpatory:

8

9

10       (1) A Certification/confirmation, from the United States Attorney's Office that there is

11  nothing to produce in Discovery related to **Giglio** issues addressing: the USAOs verbal inquiry

12  (per instruction in the United. States Attorney's Office Manual) of all FBI employees and TFOs

13  working the Zogheib case for any pending Giglio issues, and that each government employee's

14  name has been queried, with negative, results in the US Attorney's Office Giglio/Brady database

15  for past entries.

16       Specifically, the following Government agents involved in the case are: Lance Shakespear;

17  Jennifer Piovesan; Thayne A. Larson; Ryan S. Burke; Jerald Burkin; Christina Burt; Marcus J.

18  Florez; John Salazar; Neil Umphress; Sean C. Jones; Jayme E. Gentile; Include all records related

19  to any investigation of Charles Ro, who acted as a supervisor periodically on the Zogheib

20  investigation; particularly any internal investigation (Office of Professional Responsibility-OPR

21  or DOJ-IG) related to use of government money to purchase prostitution services in the

22  Philippines for targets of his investigations or other FBI employees. Produce adjudication findings

23  and penalties imposed on Ro. Produce the statement of FBI SA Marc Napolitano or any other

24  employee regarding Ro. Produce all records prepared and/or provided by FBI Director Robert

25  Mueller to the U.S. Senate Judiciary Committee at the order of U.S. Senator Charles Grassley,

26  related to Ro's use of U.S. government funds to purchase underage prostitutes in the Philippines.

27  Produce TFO IA files from their respective police agencies for any TFO working in conjunction

28  with the Zogheib investigation.

2. **Witness/ Cooperating Human Source Discovery Demand:**

a) Regarding any CHS used in the investigation (known at a minimum are S-0052998 and S-0056845):

(b)  For electronic communications not turned-over in Discovery: Disclose all phone numbers (SMS/text), email addresses or any screen names used by the FBI to communicate electronically with any CHS in this case.

(c)Disclose approvals granted by the FBI for the case agents/handlers to communicate electronically with the CHS or that those required approvals were not obtained.

(d)  Disclose all money paid in total for any purpose to the CHS including both expenses and services (CHS "V" sub-file);

(e)  Disclose the amount of money paid related strictly to the Zogheib case (Services + Expenses broken out separately).

(f)  Disclose the most recent Criminal History of the witness/Cooperating Human Source.

(g)  Disclose the results of FBI required Public Records checks for CHS from commercial databases (e.g. Lexis/Nexus-Investigator/Accurint);

(h)  Disclose the results of periodic Indices/Sentinel inquires related to CHSs (specifically if the CHS was indexed as a reference or subject in other FBI investigations);

(i)  Disclose all FBI approvals for the CHS to engage in Otherwise Illegal Activity (OIA) and include dates of authority and termination of authority;

(j)  Provide copies of consensual monitoring authorization ECs/approval forms and consensual monitoring forms (FD-472 and FD-473) signed by the CHS.

(k)  Copies of any admonishments documented to the CHS file evidencing the CHS having violated rules, violated policies etc.;

(l)  Disclose any third party benefit agreements documenting the CHS is working-off prosecution issues of another person;

(m) Disclose any prosecution deferral or declination or benefit (e.g. Visa adjustment) promised to

the CHS in exchange for the CHS's cooperation.

(n)  Disclose the results of the required CHS "Testing" by the case agents if the CHS failed the testing. In any case, confirm the CHS was tested via policy.

(o)  Disclose if the CHS had recording equipment routinely assigned to him for extended periods of time, which is routine with CHS's in the FBI. Disclose if that recording equipment was in the possession of the CHS while meeting with Zogheib but not used to record conversations.

**TEXTS/EMAIL/IM/TOLL RECORDS**:

(p)  All TEXTS/SMS, IM plus EMAIL on BOTH the FBI internal (FBI Net) and FBI official external (Internet Café-IC) to/from all agents, TFOs, CHSs or professional support staff relating in any way to the investigation.


NOTE: specifically include not only officially assigned long-term phones (Galaxy-Bu phone) but ALL FBI owned cell phones INCLUDIING any cell phones or devices purchased specifically for the UCO. The internal FBI IM application should also be searched. If personal or private devices were used by agents, produce those relevant communications also.

Produce all relevant IM/texts/emails for the entire investigation period, but prioritize first for production:

**SPECIFICALLY SOUGHT ARE ALL COMMUNICATIONS OF: S.A. LANCE SHAKESPEAR, S.A. RYAN S. BURKE and S.A. THAYNE A. LARSON;**

FOR: All electronic communications with any investigator and any or either CHS regarding Defendant Zogheib;

(q)  Detail funds expended, and any documents related to purchase by government agents of software/apps to configure text communication to save incoming communications and/or delete outgoing communications.

(r)  Toll records for all calls and texts for any agent assisting in the investigation contacting CHS phones. Include voice contact and text contact with numbers contacted, date, time and length of contact.

(s)  ANY criminal history, investigative files or Brady/Giglio material for KENNETH RICHARD WYNN.

(t)  ANY criminal history, investigative files or Brady/Giglio materials for KIRK EVAN LEWIS.

(u)  Any worksheets, work papers, notes, reports or forensic exam results of the email alleged to have been sent on or about 05/10/2011 to Kenneth Wynn, specifically where the email originated, where it was received and the identity of the sender. Include IP addresses, routing evidence, and any evidence that the email was transmitted into the State of Nevada.

**OTHER MATERIALS:**

(v)  All FD-302 reports, FD-1023s or Electronic Communications (ECs) for any contact with NSDC guards regarding Jeffrey Turino's accessing other inmate's discovery at the Southern Nevada Detention Center.

(w)  All recorded calls in possession of the FBI of Anthony Zogheib speaking on telephones at any detention/prison facility at which he has been incarcerated, which are related to his indictment.

(x)  Records of any instructions received by the FBI for minimizing or segregating Zogheib legal calls to make sure privileged conversations are not overheard by the government.

(y)  Any reports/notes of government agents who listened to Zogheib's recorded calls. Specifically include agent notes, even if handwritten or not entered into the FBI official record keeping system.

(z) All records in possession of the government showing any travel activity (credit card receipts/airline tickets etc) for the whereabouts of Kenny Wynn from the period of 05/01/2011 through 05/20/2011.

(aa) All records in possession of the government showing any travel activity (credit card receipts/airline tickets etc) for the whereabouts of Anthony Zogheib from the time of 05/01/2011

1    through 05/20/2011.

2

3    (bb)   All records of interview of Kenny Wynn regarding conversations, observations or activities

4    Wynn engaged in with Zogheib during two days aboard Zogheib's yacht in or near the San Diego

5    Marriott Harbor in mid-2013.

6

7    (cc) Opening communication of FBI File 281N-2476818.

8    (dd) Serial 13 of 318B-LV-41778-GJ. (Document was deleted and removed from Zogheib file).

9

10   (ee) Opening communication (EC or other) authorizing the opening and Full Field Investigation of
     318B-LV-41778.

11

12   (ff) The Sentinel listing/index of "1As" in the case.

13   (gg) Any reports/notes of government agents who listened to Zogheib's recorded calls.

14   Specifically include agent notes, even if handwritten or not entered into the FBI official record

15   keeping system.

16

17   (hh) All records in possession of the government showing any travel activity (credit card

18   receipts/airline tickets etc) for the whereabouts of Kenny Wynn from the period of 05/01/2011

19   through 05/20/2011.

20   (ii) All records in possession of the government showing any travel activity (credit card

21   receipts/airline tickets etc) for the whereabouts of Anthony Zogheib from the time of 05/01/2011

22   through 05/20/2011.

23

24   (jj) All records of interview of Kenny Wynn regarding conversations, observations or activities

25   Wynn engaged in with Zogheib during two days aboard Zogheib's yacht in or near the San Diego

26   Marriott Harbor in mid-2013.

27   (kk)  Opening communication of FBI File 281N-2476818.

28

(ll)   Serial 13 of 318B-LV-41778-GJ. (Document was deleted and removed from Zogheib file).

(mm)  Opening communication (EC or other) authorizing the opening and Full Field Investigation of 318B-LV-41778.

(nn) The Sentinel listing/index of "1As" in the case.

(oo) Any and all communications including e-mails and correspondence establishing the existence of a "shadow prosecution," vindictive prosecution, non-adherence to Petite Policy, Selective and vindictive prosecutions, outrageous government conduct (i.e. conduct which shocks the conscience. (Note that this request is new, but there is no reason at this time to believe that given the blanket refusal to dignify the foregoing requests with voluntary compliance).

(pp) Produce any records, email, text, EC's FBI Tech Request Forms or other evidence regarding the seeking or obtaining of a 2703(d) Order under the Electronic Communications Privacy Act of 1986 for records sought reading Jihad Anthony Zogheib, Paul S. Nassif, Kenneth Wynn, or Kirk Evan Lewis from Google, MGM Resorts International (and reklated entities), Wells Fargo Bank or any other financial institution.

(qq) Any divorce records of Paul S. Nassif, M.D., specifically related to financial aspects of Nassif's divorce proceedings.

(rr) Any bankruptcy records related to Kirk Evan Lewis, including records of the U.S. Bankruptcy Court.

(ss) Email, text or FBI report of interview (FD-302), or IRS report of interview for contact witrh Steve Saum on or about 11/08/2016 believed to have been conduxcted at 910 South Lola Lane, Pahrump, NV.

(tt) Email, text or FBI report of interview (FD-302), or IRS report of interview for Donna Walker-

1  Zgreib on or about 11/08/2016, believed to have been conducted at 910 Lola Lane, Pahrump, NV.

2

3  (vv) Any records of contact with Nye County Sheriff Sharon Wehrly regarding Steve Saum,

4  Anthony Zogheib, Nye Counties Technologies, Inc. or Jeffrey Turino.

5

6  (ww) Any reports of interview of Cynthia Taylor Miller.

7

8  (xx) Any wire transfer records, Federal Reserve Bank records or other financial records

9  evidencing an alleged wire transfer of $268,000 on or about 02/25/2011 that was executed via the

10  Federal Reserv e FedWire system, the Real Time Gross Settlement System (RTFS) or Clearing

11  House for the Interbank Payment System (CHIPS).

12

13  (yy) Transcripts of Federal Graand Jury 2012-R01002 or 2014-R01942, in the District of Nevada,

14  related to Jihad Anthony Zogheib.

15  (zz) Any records of interview documents, filings or other evidenced regarding contact with the

16  United States Securities Exchange Commission (SEC) regarding Nye Technologies, Inc.

17

18  (aaa) Any recordings or other records of conversation between Donna Walker-Zgheib and Jihad

19  Anthony Zogheib.

20

21  (bbb) Produce page 2 of the FBI FD-302 report of interview with Kenneth Wynn dated

22  02/26/2013.

23

24  (ccc) Produce a copy of the Federal Grand Jury Subpoena number "005" in this matter related to

25  Jihad Anthony Zogheib, ("2012-R01002-005").

26

27  (ddd) Produce recording of Jihad Anthony Zogheib dated on or aboutr 08/13/2013.  Include any

28  FBI FD-472/473 forms and FD-302 reports of chain of custody on the recording device, reports of

1  surveillance and copy of the FBI form "1D" envelope fpr this recording.

2

3

4         The Defendant formally requests that the government's attorney examine its files and to

5  question the government's agents, informants or other persons working with the government in

6  this case, as to their knowledge of any such evidence or materials requested and referenced above.

7  Defendant would further request that his representatives be allowed to question the government's

8  agents concerning their knowledge of exculpatory evidence and diligence in attempting to locate

9  such evidence.

10

11                              **II.  THE LAW**

12                        **A. The Government's <u>Brady</u> Obligations**

13         The Government is obligated to disclose, upon request, to disclose any favorable evidence

14  to the accused that is material to guilt or punishment.  See, **Brady v. Maryland**, 373 U.S. 83, 87

15  (1963); **Giglio v. United States**, 405 U.S. 150, 154 (1972).  Favorable evidence includes both

16  evidence that is directly exculpatory and impeachment evidence. **United States v. Bagley**, 473

17  U.S. 667, 676-77 (1985).  The "materiality" of such evidence to guilt or punishment, however, is

18  not to be discounted and disclosure should be made even where its utility is doubtful.

19         Several recent decisions have highlighted the consequences of

20  **Brady** violations by government prosecutors.  See, e.g.,**United States v. Stevens**, No. 08-cr-231,

21  2009 U.S. Dist. LEXIS 39046 (Apr. 7, 2009); **United States v. Jones**, No. 07-10289, 2009 U.S.

22  Dist. LEXIS 41902, at * 9 (May 18, 2009) (noting prosecutor's failure to disclose exculpatory

23  material "reflects a fundamentally flawed understanding of her obligations" and ordering

24  re-training of government prosecutors).  Chief Judge Lamberth, after noting the government's

25  numerous discovery violations there, stated:  "The Court has learned that it must watch over the

26  government with heightened supervision to ensure that it performs even its most basic duties . . .

27  [and the Court will] view government assurances that it is making progress in providing discovery

28  to defendants through a much more skeptical lens.  This Court—and hopefully other courts in this

1  district—will take note that the government had to be admonished because of its failure to

2  conduct discovery in a professional manner." **United States v. Archbold-Manner**, 581 F. Supp.

3  2d 22, (D. D. C. 2008). The duty to disclose exculpatory evidence as noted in **Agurs, 427 U. S. At**

4  **108**, involves the application of"an inevitably imprecise standard."  Although the same "imprecise

5  standard" applies in the pretrial and post-trial context, the Supreme Court has recognized a

6  "practical difference" between the pretrial decision of the prosecutor, who must decide what, if

7  anything, to produce to the defense, and the post-trial decision of the judge, who must decide

8  whether a non-disclosure violated due process.  Id. Consequently, "and because the significance of

9  an item of evidence can seldom be predicted accurately until the entire record is complete, the

10  prudent prosecutor will resolve doubtful questions in favor of disclosure." [**Id**.;see also **Cone v.**

11  **Bell**, 129 S. Ct. 1769, 1783 n.15 (2009) which states:"As we have often observed, the prudent

12  prosecutor will err on the side of transparency, resolving doubtful questions in favor of

13  disclosure."); **Kyles v. Whitley**, 514 U.S. 419, 439 (1995) (stating that "a prosecutor anxious

14  about tacking too close to the wind will disclose a favorable piece of evidence.")]. A number of

15  courts, have held that the Government "must always produce any potentially exculpatory or

16  otherwise favorable evidence without regard to how the withholding of such evidence might be

17  viewed—with the benefit of hindsight—as affecting the outcome of the trial." **United States v.**

18  **Safavian,** 233 F.R.D. 12, 14 (D.D.C. 2005); see also **United States v. Naegele**, 468 F. Supp. 2d

19  150, 152 (D.D.C. 2007) [describing **Safavian** as "clarify[ing] the meaning of **Brady**, how it is to

20  be applied by the Department of Justice and the U.S. Attorney's Office in this Court, and what the

21  government is obligated to do to meet its responsibilities under **Brady**"].

22        This view of the Government's pretrial **Brady** obligation was recently cited approvingly

23  by the Ninth Circuit and it addressed the issue of the duties of "trial prosecutors who must

24  regularly decide what material to turn over." **United States v. Price**, 566 F.3d 900, 914 n.14 (9th

25  Cir. 2009). Judge Friedman in **Safavian** explained the crucial reason why all "potentially

26  exculpatory or otherwise favorable evidence" must be produced without regard for whether

27  prosecutors believe the evidence is material, because most  prosecutors  are  neither  neutral  (nor

28  should  they  be)  nor  prescient,  and  any  such  judgment  necessarily  is  speculative  on  so

1   many matters that simply are unknown and unknowable before trial begins: which
2   government witnesses will be available for trial, how they will testify and be evaluated by
3   the jury, which objections to testimony and evidence the trial judge will sustain and which he
4   will overrule, what the nature of the defense will be, what witnesses and evidence will support
5   that defense, what instructions he Court will ultimately give, what questions the jury
6   may pose during deliberations (and how they may be answered), and whether the
7   jury finds guilt on all counts or only on some (and which ones).  The prosecutor cannot
8   be permitted to look at the case pretrial through the end of the telescope of an appellate court.
9   [See, **Safavian,** 233 F.R.D. at 13-14].

10       The **Safavian** court's observation about the prosecutor's inability to view the evidence
11   impartially takes on added significance when one considers the role of defense counsel.  For it is
12   defense counsel who must ultimately decide whether a given piece of evidence is favorable, or
13   not. Although this motion deals only with the constitutional requirements of due process as
14   interpreted in Brady and later cases, a prosecutor in the District of Columbia also has an ethical
15   duty to disclose  the evidence implicated in this motion.  Rules of Professional Conduct, as
16   embodied in **Nevada Rules of Professional Responsibility**, **Rule 3.8** entitled "**Special**
17   **Responsibilities of a Prosecutor**" provides that a prosecutor shall disclose to the defense, "all
18   evidence that tends to negate guilt of the accused or mitigates the offense, and in connection with
19   sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information
20   known to the prosecutor, except when the prosecutor is relieved of this responsibility by a
21   protective order of the tribunal." See also **ABA Standards for Criminal Justice**, Prosecution
22   Function and Defense Function 3-3.11(a) (3d ed. 1993) ("A prosecutor should not intentionally
23   fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence
24   of all evidence or information which tends to negate the guilt of the accused or mitigate the
25   offense charged or which would tend to reduce the punishment of the accused"); **ABA Model**
26   **Rule of Professional Conduct 3.8(d) (1984)** which states:"The prosecutor in a criminal case
27   shall . . . make timely disclosure to the defense of all evidence or information known to the
28   prosecutor that tends to negate the guilt of the accused or mitigates the offense."

1    It is not enough to have the requirement that **Brady** material be made available at trial;

2  Disclosure early on ensures that the wisdom of any plea bargains can be evaluated properly with

3  full disclosure of favorable as well as unfavorable evidence.  Thus, even if one assumes the purest

4  of motives, a prosecutor who withholds evidence based on his own judgment that it is not

5  "potentially exculpatory or otherwise favorable" is at best substituting his judgment for that of

6  defense counsel.  Such arrogation of the defense counsel's role works systematically against

7  criminal defendants, because the consequences of a misjudgment by the prosecutor are

8  asymmetrical.  That is, if the prosecutor mistakenly turns over evidence that the defense counsel

9  deems unfavorable, that evidence will not be introduced and the prosecutor's mistake will be of

10 no consequence to anyone.  But if the prosecutor mistakenly withholds evidence that defense

11 counsel would deem favorable, then the right of the accused to a fair trial has been abridged in

12 crucial and sometimes irremediable ways.  For precisely these reasons, in this Court, the

13 Government's **Brady** obligation includes the disclosure of all favorable evidence,

14 i.e., "any information in the possession of the government . . . that relates to guilt or punishment

15 and that tends to help the defense by either bolstering the defense case or impeaching potential

16 prosecution witnesses." Id. at 15-16.

17    Despite this unambiguous standard, the prosecution and the defense have frequently been

18 "two ships passing in the night when it comes to **Brady**." **Naegele**, 468 F. Supp. 2d at 152.  In

19 this case, for instance, the Government has taken the position that **Brady** does not require

20 disclosure of evidence that a particular victim was not shot by any of these defendants. If the

21 Government has such a fundamental misconception of its **Brady** obligation, it is impossible for

22 the defendants or the Court to place any reliance on the Government's assurances that it

23 understands its **Brady** obligations or that it is unaware of any responsive **Brady** material.  See

24 581 F. Supp. 2d at 22 (stating the Court "will view government assurances **Archbold-Manner,**

25 that it is making progress in providing discovery to defendants through a much more skeptical

26 lens"); **Naegele,** 468 F. Supp. 2d at 152 n.2. (stating that the court would no longer accept such

27 conclusory assertions by the Government). Accordingly, the defendants request that the Court

28 order the Government to disclose "all evidence relating to guilt or punishment which might be

1   reasonably considered favorable to the defendants['] case, that is, all favorable evidence that is

2   itself admissible or that is likely to lead to favorable evidence that would be admissible, or that

3   could be used to impeach a prosecution witness." **Safavian**, 233 F. R. D. at 17 (internal

4   quotations and citations omitted).

5

6                        **B. Disclosure of Brady Materials Must be Timely**.

7

8            Mr. Zogheib respectfully requests that all **Brady** materials be disclosed on a timely basis.

9   The Supreme Court has never precisely pinpointed the time at which the disclosure under **Brady**

10  must be made.  It is abundantly clear, however, that disclosure must be made at such a time as to

11  allow the defense to use favorable material effectively in the evaluation of proffered plea bargains

12  and in time for the preparation and presentation of its case.  **United States v. Quinn**, 537 F. Supp.

13  2d 99, 108 (D. D. C. 2008).  "[A] prosecutor's timely disclosure obligation with respect to

14  [**Brady**] material cannot be overemphasized," and the practice of delayed production must be

15  disapproved and discouraged.  **United States v. Starusko**, 729 F.2d 256, 261 (3d Cir. 1984)

16  (citations omitted). To allow the Government to purposely conceal known exculpatory material

17  until it chooses to disclose it would sanction gamesmanship at the expense of justice.  See **Brady**,

18  373 U.S. at 87 (emphasizing prosecutor's responsibility is not to win convictions but to see that

19  justice is done).  Thus, if the Government now possesses, or in the future becomes aware of,

20  **Brady** materials, it should make it available forthwith so that the defense, not the Government,

21  may determine for itself how to best make use of the information. Indeed, the legal profession's

22  regulatory authorities have expressed the propriety of and need for early disclosure of Brady

23  material.  See, e.g., **ABA Standards for Criminal Justice**, 11-2.1(c), 11-2.2(a) (3d  ed. 1993)

24  (disclosure "as soon as practicable following the filing of charges"); id. 3-3.11(a) ("disclosure at

25  the earliest feasible opportunity") (quoted in **Kyles,** 514 U.S. at 437 (emphasis added); D.C. Rules

26  of Professional Conduct, Rule 3.8 (disclosure "upon request and at a time when use by the defense

27  is reasonably feasible").  The prosecutors, no less than any other attorneys, are bound by the ethics

28  rules. "[A] more lenient disclosure burden on the government would drain **Brady** of all vitality."

1    **United States v. Elmore**, 423 F.2d 775, 779 (4th Cir. 1970). The case for early production of all

2    Brady material in this case is compelling. "An attorney for the Government shall be subject to

3    State laws and rules, and local Federal Court rules, governing attorneys in each State where such

4    attorney engages in that attorney's duties, to the same extent and in the same manner as other

5    attorneys in that State." **Title 28 U.S.C. § 530B (a).**  Moreover, the risks of

6    spoliation of evidence, or inability to locate witnesses or refresh recollections, are greatly

7    amplified with the passage of time.  Given these difficult circumstances, delaying the production

8    of **Brady** material risks delaying the trial as the defense attempts to investigate information

9    learned through the Government's belated **Brady** disclosures.

10          Since the preliminary and limited production of discovery documents, which included a

11   very limited amount of **Brady** material, the Government has settled into a pattern of ignoring

12   what **Brady** materials are within its possession and therefore, must be ordered disclosed by a date

13   certain, or the defendants herein will have every reason to fear they will continue to receive bits

14   and pieces of exculpatory information until the eve of trial.  To make effective use of this

15   information, the defense needs adequate time to consider this information and conduct a thorough

16   investigation.  This cannot be accomplished if disclosure is delayed. The cumulative significance

17   of the Government's foot-dragging is troubling.  Given how extraordinarily difficult it will be for

18   the defendants to conduct further factual investigation, particularly with witnesses who may still

19   be in scattered all over the country, this is the kind of case that cries out for open-file discovery,

20   which the defendants have requested.  The Government's current refusal to adopt such a policy is

21   puzzling at best; at worst, it betrays a win-at-all-costs attitude that is never appropriate.  Further,

22   the **Jencks Act**, does not vitiate the Government's **Brady** obligation to disclose witness

23   statements well in advance of trial if portions of those statements also fall under **Brady**.  See

24   **United States v. Tarantino**, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988) (limitations on discovery

25   in **Jencks Act** do not lessen **Brady** obligation).  "**Brady** always trumps . . . **Jencks** . . . ."

26   disclosure timings. [c.f., **Safavian**, 233 F.R.D. at 16.]  The U.S. Attorney's Office has long

27   improperly treated **Giglio** materials as some  lesser-importance sub set of **Brady** materials,

28   permitting it to turn over such material at or near the trial date, it is clear that **Giglio** materials are

1   **Brady** materials and must be produced in a timely fashion to enable the defense to make

2   meaningful use of that information.  See **Bagley**, 473 U.S. at 676 (stating impeachment evidence

3   "falls within the **Brady** rule"); **Kyles,** 514 U.S. at 433 (noting there is no "difference between

4   exculpatory and impeachment evidence" when it comes to the prosecutor's duty to disclose

5   evidence favorable to the accused).  Accordingly, the defendants request that the Government be

6   ordered to produce all **Brady** material, including any documents or information the Government

7   considers to be **Giglio** material.

8        The Defendant would request that the government's attorney be ordered to examine his

9   files and to question the government's agents, informants or other persons working with the

10  government in this case, as to their knowledge of any such evidence or materials.  Defendant

11  would further request that he be allowed to question the government's attorney and the

12  government's agents concerning their knowledge of exculpatory evidence and diligence in

13  attempting to locate such evidence.

14                          **III. CONCLUSION**

15       The Government's duty of disclosure is based upon the accused's right to due process of

16  law under the **Fifth Amendment** to the United States Constitution, and as interpreted by the

17  courts.  Because fundamental rights are involved the Government has a duty to disclose any

18  evidence that is arguably favorable to a Defendant's case.  The evidence should be disclosed

19  promptly upon its discovery by the Government.  One does not have to look beyond the recent

20  events in one of the most prominent prosecutions specifically, United States v. Bundy, 2:16-cr-

21  00046-GMN-PAL to realize sadly that the Office of the United States Attorney in this District

22  fails to take seriously its obligation to see that justice is done.  Its win at all costs philosophy has

23  done a disservice to the good name of the Department of Justice, and resulted in the Chief Judge

24  dismissing that case with prejudice.

25       The Defendant has given examples in his motion of what he considers to be

26  exculpatory evidence.  That list is not exhaustive, and the Government's duty of production

27  should not be limited to those specific items, but should be interpreted broadly to include any item

28  that is arguably favorable to the Defense.

1    WHEREFORE, the Defendant prays that his motion for exculpatory or **Brady** materials be

2  GRANTED.

3

4

5                                          DATED this 19th day of January, 2018.

6                                          Respectfully Submitted,

7                                          ___/s/_____

8                                          Randall J. Roske, Esq.
                                           Attorney for Jihad Anthony Zoghieb

9

10

11

12                        **DECLARATION OF COUNSEL RANDALL J. ROSKE**

13

14        Declarant, Randall J. Roske, under penalty of perjury, makes the following declaration:

15  1.    That Declarant is  an attorney duly licensed to practice in the State of Nevada, and in such

16        capacity  to act as counsel of record for Defendant, Jihad Anthony Zoghieb, in the case

17        styled United  States of America v. Jihad Anthony Zoghieb. with an assigned District

18        Court Case Number of  2:16-cr-00057-LRH-VCF.

19

20  2.    That Declarant prepared and sent a letter to the prosecutors via e-mail, on October 24, 2017

21        and October 31, 2017.   Please see the Letters attached as "**Exhibits A and B.**"

22

23  3.    That your Declarant has not received any responsive correspondence from the United

24        States Attorney, as of the drafting of this Motion, save a terse communique to go ahead

25        and file your motion.

26  4.    That Declarant requested that the prosecution accept his letters referenced above as

27        compliance with Local Rule 26-7(c)  meet-and-confer requirement, in an attempt to

28        resolve discovery disputes before the filing of any Motion to Compel.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED this 19th day of January 2018.

_/s/_____
Randall J. Roske, Esq.

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

# Law Office of Randall J. Roske
400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101
☎702.793-4211
e-mail: randallroske@yahoo.com

October 24, 2017

Mr. Patrick Burns,
Assistant United States Attorney
Office of the United States Attorney,
for the District of Nevada,
501 Las Vegas Boulevard South,
Suite 1100,
Las Vegas, Nevada 89101

RE: **United States v. Zihad Anthony Zogheib,** Case Number 2:16-cr-057-LRH-VCF

**VIA: e-mail only:** john.p.burns@usdoj.gov

Dear Mr. Burns:

As Mr. Zogheib's counsel in the above referenced case, I have obtained specialized investigative assistance. My Investigator has preliminarily identified items of Brady (and progeny) materials that are necessary for the completion of the defense investigation. The attached is a first request for specific forms of exculpatory evidence.

The Defendant formally requests that the government's attorneys examine their files and to question the government's agents, informants or other persons working with the government in this case, as to their knowledge of any such evidence or materials. Defendant would further request that his representatives be allowed to question the government's agents concerning their knowledge of exculpatory evidence and diligence in attempting to locate such evidence.

# Documents demand in Zogheib 2:16-cr-00057:

## GIGLIO

1) Certification/confirmation, from the US Attorney's Office that there is nothing to produce in Discovery related to Giglio issues due to: the USAOs verbal inquiry (per instruction in the U.S. Attorney's Office Manual) of all FBI employees and TFOs working the Zogheib case for any pending Giglio issues, and that each government employee's name has been queried, with negative, results in the US Attorney's Office Giglio/Brady database for past entries.

> Specifically: Lance Shakespear; Jennifer Piovesan; Thayne A. Larson; Ryan S. Burke; Jerald Burkin; Christina Burt; Marcus J. Florez; John Salazar; Neil Umphress; Sean C. Jones; Jayme E. Gentile;

- Specifically, all records related to any investigation of **Charles Ro,** who acted as a supervisor periodically on the Zogheib investigation; particularly any internal investigation (Office of Professional Responsibility-OPR or DOJ-IG) related to use of government money to purchase prostitution services in the Philippines for targets of his investigations or other FBI employees. Produce adjudication findings and penalties imposed on Ro. Produce the statement of FBI SA Marc Napolitano or any other employee regarding Ro. Produce all records prepared and/or provided by FBI Director Robert Mueller to the U.S. Senate Judiciary Committee at the order of U.S. Senator Charles Grassley, related to **Ro**'s use of U.S. government funds to purchase underage prostitutes in the Philippines.

- Produce TFO IA files from their respective police agencies for any TFO working in conjunction with the Zogheib investigation.

1

# CHS Discovery Demand

2) Regarding any CHS used in the investigation (known at a minimum are S-0052998 and S-0056845):

- For determining electronic communications not turned-over in Discovery: Disclose all phone numbers (SMS/text), email addresses or any screen names used by the FBI to communicate electronically with any CHS in this case.
- Disclose approvals granted by the FBI for the case agents/handlers to communicate electronically with the CHS or that those required approvals were not obtained.
- Disclose all money paid in total for any purpose to the CHS including both expenses and services (CHS "V" sub-file);
- Disclose the amount of money paid related strictly to the Zogheib case (Services + Expenses broken out separately).
- Disclose the most recent Criminal History.
- Disclose the results of FBI required Public Records checks for CHS from commercial databases (e.g. Lexis/Nexus-Investigator/Accurint);
- Disclose the results of periodic Indices/Sentinel inquires related to CHSs (specifically if the CHS was indexed as a reference or subject in other FBI investigations);
- Disclose all FBI approvals for the CHS to engage in Otherwise Illegal Activity (OIA) and include dates of authority and termination of authority;
- Provide copies of consensual monitoring authorization ECs/approval forms and consensual monitoring forms (FD-472 and FD-473) signed by the CHS.
- Copies of any admonishments documented to the CHS file evidencing the CHS having violated rules, violated policies etc.;
- Disclose any 3rd party benefit agreements documenting the CHS is working-off prosecution issues of another person;
- Disclose any prosecution deferral or declination or benefit (e.g. Visa adjustment) promised to the CHS in exchange for the CHS's cooperation.

- Disclose the results of the required CHS "Testing" by the case agents <u>if the CHS failed the testing.</u>   In any case, confirm the CHS was tested via policy.
- Disclose if the CHS had recording equipment routinely assigned to him for extended periods of time, which is routine with CHS's in the FBI.  Disclose if that recording equipment was in the possession of the CHS while meeting with Zogheib but not used to record conversations.

## <u>TEXTS/EMAIL/IM/TOLL RECORDS</u>

3) All TEXTS/SMS, IM plus EMAIL on BOTH the FBI internal (FBI Net) and FBI official external (Internet Café-IC) to/from all agents, TFOs, CHSs or professional support staff relating in any way to the investigation.

   **NOTE:** specifically include not only officially assigned long-term phones (Galaxy-Bu phone) but ALL FBI owned cell phones INCLUDIING <u>any cell phones or devices purchased specifically for the UCO.</u>  The internal FBI IM application should also be searched.  If personal or private devices were used by agents, produce those relevant communications also.

   Produce all relevant IM/texts/emails for the entire investigation period, <u>but prioritize first for production</u>:

   THOSE COMMUNICATIONS OF: LANCE SHAKESPEAR, RYAN S. BURKE and THAYNE A. LARSON;

   FOR:
   All electronic communications with <u>any</u> investigator and any (either) CHS regarding Zogheib;

4) Detail funds expended, and any documents related to purchase by government agents of software/apps to configure text communication to save incoming communications and delete outgoing communication.

5) Toll records for all calls and texts for any agent assisting in the investigation contacting CHS phones.  Include voice contact and text contact with numbers contacted, date, time and length of contact.

6) ANY criminal history, investigative files or Brady/Giglio material for KENNETH RICHARD WYNN.

7) ANY criminal history, investigative files or Brady/Giglio material for KIRK EVAN LEWIS.

8) Any worksheets, work papers, notes, reports or forensic exam results of the email alleged to have been sent on or about 05/10/2011 to Kenneth Wynn, specifically where the email originated, where it was received and the identity of the sender. Include IP addresses, routing evidence, and any evidence that the email was transmitted into the State of Nevada.

# OTHER

9) All FD-302 reports, FD-1023s or Electronic Communications (ECs) for any contact with NSDC guards regarding Jeffrey Turino.

All recorded calls in possession of the FBI of Anthony Zogheib speaking on telephones at any detention/prison facility at which he has been incarcerated related to his indictment.

10)    Records of any instructions received by the FBI for minimizing or segregating Zogheib legal calls to make sure privileged conversations are not overheard by the government.

11)    Any reports/notes of government agents who listened to Zogheib's recorded calls. Specifically include agent notes, even if handwritten or not entered into the FBI official record keeping system.

12)    All records in possession of the government showing any travel activity (credit card receipts/airline tickets etc) for the whereabouts of Kenny Wynn from the period of 05/01/2011 through 05/20/2011.

13)    All records in possession of the government showing any travel activity (credit card receipts/airline tickets etc) for the whereabouts of Anthony Zogheib from the time of 05/01/2011 through 05/20/2011.

14)    All records of interview of Kenny Wynn regarding conversations, observations or activities Wynn engaged in with Zogheib during two days aboard Zogheib's yacht in or near the San Diego Marriott Harbor in mid-2013.

15)    Opening communication of FBI File 281N-2476818.

16)    Serial 13 of 318B-LV-41778-GJ.  (Document was deleted and removed from Zogheib file).

17)    Opening communication (EC or other) authorizing the opening and Full Field Investigation of 318B-LV-41778.

18)    The Sentinel listing/index of "1As" in the case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

# Law Office of Randall J. Roske
400 South Fourth Street, Suite 500
Las Vegas, Nevada 89101
☎702.793-4211
e-mail: randallroske@yahoo.com

October 31, 2017

Mr. Patrick Burns,
Assistant United States Attorney
Office of the United States Attorney,
for the District of Nevada,
501 Las Vegas Boulevard South,
Suite 1100,
Las Vegas, Nevada 89101

RE: **United States v. Zihad Anthony Zogheib,** Case Number 2:16-cr-057-LRH-VCF

 **VIA: e-mail only**: john.p.burns@usdoj.gov

Dear Mr. Burns:

As you all ready know, that as Mr. Zogheib's counsel in the above referenced case, I have obtained specialized investigative assistance.  My Investigator has identified additional items of Brady (and progeny) materials as he has worked through the discovery, that are necessary for the completion of the defense investigation. The attached is a second request for specific forms of exculpatory evidence.

Once again, the Defendant formally requests that the government's attorneys  examine their files and to question the government's agents, informants or other persons working with the government in this case, as to their knowledge of any such evidence or materials set forth in the attached exculpatory evidence demand. The Defendant would further request that his

representatives be allowed to question the government's agents concerning their knowledge of exculpatory evidence and diligence in attempting to locate such evidence.

Thank you for your assistance in this matter, and I shall await the favor of your response. I shall calendar your response for November 6, 2017. If this time frame is not practical, I suggest we meet and confer in an attempt to resolve the problem as required by the local Rules. Specifically, Local Rule 26-7 (c) requires:

Discovery motions will not be considered unless the movant (1) has made a good-faith effort to meet and confer as defined in LR IA 1-3(f) before filing the motion, and (2) includes a declaration setting forth the details and results of the meet-and-confer conference about each disputed discovery request.

Kindly accept this letter as Defense Counsel's effort to establish a "meet and confer" conference as required by the United States District Court of the District of Nevada's Local Rules of Practice, to resolve any discovery disputes, without resort to filing a Motion to Compel Disclosures.

Sincerely,

/s/ _____
Randall J. Roske
Attorney for Zogheib

encl.

# Second Defense Document demand in Zogheib 2:16-cr-00057:

1. Produce any records, email, text, EC's, FBI Tech Request forms or other evidence regarding the seeking or obtaining of an 2703(d) Order under the Electronic Communications Privacy Act of 1986 for records sought reading Jihad Anthony Zoghieb, Paul S. Nassif, Kenneth Wynn or Kirk Lewis Evans from Google, MGM Resorts International (and related entities), Wells Fargo Bank or any other financial institution.

2. Any divorce records of Paul S. Nassif, M.D., specifically related to financial aspects of Nassif's divorce proceedings.

3. Any bankruptcy records related to Kirk Evan Lewis, including records of the U.S Bankruptcy Court.

4. Email, text or FBI report of interview (FD-302), or IRS report of interview for contact with Steven Saum on or about 11/08/2016, believed to have been conducted at 910 South Lola Lane, Parhump, NV.

5. Email, text or FBI report of interview (FD-302) or IRS report of interview for contact with Donna Walker-Zgheib on or about 11/08/2016, believed to have been conducted at 910 South Lola Lane, Parhump, NV.

6. Any records of contacts with Nye County Sheriff Sharon Wehrly regarding Steven Saum, Anthony Zogheib, Nye Technologies, Inc. or Jeffrey Turino.

7. Any reports of interview of Cynthia Taylor-Miller.

8. Any wire transfer records, Federal Reserve Bank records or other financial institution records evidencing an alleged wire transfer of $268,000 on or about 02/25/2011 was executed via the Federal Reserve FedWire system, the Real Time Gross Settlement System (RTGS) or the Clearing House for Interbank Payment System (CHIPS).

9. Transcripts of Federal Grand Jury 2012-R01002 or 2014-R01942, District of Nevada, related to Anthony Zogheib.

10. Any records, interview documents, filings or other evidence regarding contact with the United States Securities Exchange Commission (SEC) regarding Nye Technologies, Inc.

11. Any recordings or other records of a conversation between Donna Walker-Zgheib and Anthony Zogheib on or about 12/25/2016 occurring at the Nevada Southern Detention Center (NSDC), Parhump, NV.

12. Produce page 2 of FBI FD-302 report of interview with Kenneth Wynn dated 02/26/2013.

13. Produce copy of Federal Grand Jury subpoena number "005" in this matter related to Anthony Zogheib, ("2012-R01002-005").

14. Produce recording of Anthony Zogheib dated on or about 08/13/2013. Include any FBI FD-472/473 forms and FD-302 reports of chain of custody on the recording device, reports of surveillance and copy of the front of the FBI form "1D" envelope for this recording.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D

# *JEFF DANIK*
## *FBI-Retired*



Former FBI Supervisory Special Agent Jeff Danik retired after a diverse, twenty-eight-year career with the FBI.  His assignments included as a Supervisor and Acting Watch Commander in the FBI's Counter-Terrorism Division, lengthy tours as the FBI representative to Saudi Arabia and in the Horn of Africa, as well as a two-year assignment as the FBI representative to Kuwait.  He holds the unique distinction of serving as an Acting Assistant Agent-in-Charge of both a violent crime and a white-collar crime branch of a major FBI field office.

Danik supervised highly-successful FBI task force operations in both white-collar crime and violent crime programs.  In his final assignment, he had numerous police officers and detectives assigned to him as Task Force Officers.   His Task Forces became models recognized by FBI leadership as best practices to be implemented elsewhere in the FBI.

He served as a long-time FBI street agent in south Florida and was the lead investigator in kidnapping and bank robbery investigations, and, being a former Certified Public Accountant, Danik has an extensive, successful track record of significant federal investigations into stock fraud, public corruption, money laundering, healthcare fraud, government procurement fraud, the Foreign Corrupt Practices Act and financial institution fraud.  He is responsible for convicting hundreds of

1

people of crimes and has been named an Outstanding Investigator of the Year on several occasions by the United States Attorney's Office.

Danik has extensive experience with the FBI undercover program. He received an award from the FBI Director for his role as an undercover agent in a significant money laundering case and has led numerous FBI undercover investigations, one of which was recently awarded the prestigious Attorney General's Award for Fraud Prevention.

Currently he is engaged on numerous criminal defense cases as a consultant related to reviewing and evaluating the strength and weaknesses of law enforcement investigations conducted against clients. Many attorneys have found his input crucial to constructing their client's defense. He is a volunteer, pro-bono, court appointed Guardian-ad-Litem in Florida, representing abused and neglected children under the court's supervision.

Danik also advises private companies on due-diligence, risk assessments, security and supply chain issues and he counts a major motion picture industry writer as a client. He is a Florida licensed private investigator.

Danik is often quoted by, or works with media outlets regarding FBI issues, including The Wall Street Journal, Newsweek, The Intercept, local CBS affiliates, Sinclair Broadcasting and Judicial Watch. He has appeared on many live and recorded broadcast television programs and webcasts.

Danik graduated with Honors from the University of Memphis, served four years in the U.S. Air Force, served as an intern in the U.S. Senate, held a private pilot license and spent two years on staff with an international, "big-four", CPA firm.