DAYLE ELIESON
United States Attorney
PATRICK BURNS
Nevada State Bar #: 11779
RICHARD ANTHONY LOPEZ
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada  89101
(702)  388-6336/Fax: (702) 388- 6418
John.P.Burns@usdoj.gov

*Representing the United States of America*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**JIHAD ANTHONY ZOGHEIB,**<br><br>**Defendant.** | **Case No.: 2:16-cr-00057-LRH-VCF**<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT ZOGHEIB'S "MOTION FOR FAVORABLE EVIDENCE"**<br>**[ECF No. 82]** |

The United State of America, by and through DAYLE ELIESON, United States Attorney, PATRICK BURNS, and RICHARD ANTHONY LOPEZ, Assistant United States Attorneys, hereby respectfully submits this Response in Opposition to Defendant Zogheib's Motion for Favorable Evidence" [ECF No. 82]. Through his motion, Zogheib attempts to misuse the discovery process by seeking information regarding personal grudges unrelated to the issues in this case,[1] by requesting documents and certifications

---

[1] In particular, Zogheib's motion includes numerous requests concerning an affair Zogheib's now-deceased wife engaged

that, under Ninth Circuit and Supreme Court precedent, he is not entitled to receive, and by asking the Government to obtain and provide Zogheib with his victims' divorce and bankruptcy records in what appears to be a thinly veiled attempt to fish for potentially embarrassing information about the people he defrauded.

As explained further below, each of Zogheib's requests should be DENIED as improper, irrelevant, or moot.

## I. Factual and Procedural Background

This case arises out of Defendant Jihad Anthony Zogheib (Zogheib) operating a business-investment fraud scheme in order to sustain his gambling addiction and luxury lifestyle. Among others, Zogheib defrauded victims K.L., K.W., and P.N. by presenting them with false business investment proposals. When the victims gave Zogheib hundreds of thousands of dollars based on his false representations, he immediately took those funds and gambled them or transferred them to other victims he owed repayment of fraudulently-obtained funds. In this way, he essentially operated a type of ongoing Ponzi scheme. Zogheib operated this multi-victim scheme to defraud from 2010 through June 2013 and beyond.

On February 23, 2016, the Government filed a grand jury indictment charging Zogheib with the following: Counts 1-5 – Wire Fraud (18 U.S.C. § 1343); and Counts 6-7 – Money Laundering (18 U.S.C. § 1957). The indictment related to Zogheib's business

---

in with Zogheib's now-deceased former cellmate at Pahrump. Zogheib previously flooded this District's dockets with letters in his cellmate's case seeking information about this affair (*see, e.g.*, *United States v. Turino*, Case No. 2:09-cr-00132-JAD-GWF, ECF Nos. 472-501, 502-504, 519) and by filing state and federal lawsuits against that cellmate (*see, e.g.*, *Zogheib v. Turino*, 2:17-cv-00873-JAD-CWH). Now, Zogheib seeks the same or similar information from this Court under the guise of criminal discovery.

investment fraud scheme, which victimized individuals identified as K.W. and K.L. On April 5, 2016, the Government filed a superseding grand jury indictment, which charged Zogheib with: Counts 1-8 – Wire Fraud (18 U.S.C. § 1343); and Counts 9-10 – Money Laundering (18 U.S.C. § 1957). The superseding indictment added several wire fraud charges relating to an additional victim of Zogheib's scheme who is identified as P.N. Calendar call and trial on the superseding indictment are currently set for March 1 and 12, 2018, respectively. On January 20, 2018, Zogheib filed this "Motion for Favorable Evidence." The Government's response in opposition follows.

## II.   Argument

### A. Legal Standard for Materiality Under Federal Rules of Criminal Procedure Rule 16

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure entitles a defendant to inspect and copy tangible things in the Government's possession, custody, or control, such as books, papers, documents, etc., provided: (1) the item is material to preparing the defense; (2) the government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant. "'[T]o obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.'" *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) (citations omitted). This "threshold showing of materiality…requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.1990)). Although the materiality threshold is "low," "[n]either a general description of the information sought nor conclusory allegations of materiality

3

suffice[.]" *Id.* at 804 (quoting *Mandel*, 914 F.2d at 1219); *see also id.* at 894–95. A district court's discovery rulings under Rule 16 will not be overturned absent an abuse of discretion. *United States v. Lee*, 589 F.2d 980, 989 (9th Cir.), *cert. denied*, 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979).

## B. The Government's Disclosure Obligations Under *Brady* and *Giglio*

The United States Supreme Court has noted that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *see also United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) ("We have often noted that *Brady* requests cannot be used as discovery devices."); *United States v. Quinn*, 123 F.3d 1415, 1421 (11th Cir. 1997) ("[T]he Supreme Court has made it clear that the *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant and that '[t]here is no general constitutional right to discovery in a criminal case.'") (quoting *Weatherford*, *supra*)); *United States v. Jones*, 678 F. Supp. 1302, 1303 (S.D. Ohio 1988) ("The United States Court of Appeals for the Sixth Circuit has repeatedly stated that the *Brady* rule is not a discovery device and that it confers no pretrial rights or remedies." (citations omitted)). Thus, even if a piece of purported discovery could meet *Brady*'s standard for possession or materiality, that decision may not be relied upon for an order compelling pretrial discovery where Rule 16, the Jencks Act—the mechanical rules governing pretrial discovery—do not permit it.

The materiality standard under *Brady* and *Giglio* is extremely high. In *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." In *Giglio* v. *United States*, 405 U.S. 150, 154 (1972), the Court reiterated its prior holding that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice," and it clarified that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *See Amado* v. *Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014) ("Favorable evidence is not limited to evidence that is exculpatory, i.e., evidence that tends to prove the innocence of the defendant. Favorable evidence includes that which impeaches a prosecution witness.") (citing *Giglio*)).

Exculpatory and impeachment evidence is material to a finding of guilt—and thus the Constitution requires disclosure—when there is a reasonable probability that effective use of the evidence will result in an acquittal. *United States* v. *Bagley*, 475 U.S. 667, 676 (1985). Under *United States* v. *Henthorn*, 931 F.2d 29, 30 (9th Cir. 1991), "the government has a duty, upon defendant's request for production, to inspect for material information the personnel records of federal law enforcement officers who will testify at trial." *United States* v. *Santiago*, 46 F.3d 885, 895 (9th Cir. 1995).

**C. Responses to Zogheib's Specific Requests**

**1) Demand for Certification/Confirmation of Absence of *Giglio* Information; Records Related to FBI Agent Charles Ro; Production of Task Force Officer (TFO) Internal Affairs Files (1)**

*Demand for Certification Regarding* Giglio *Material*

While the Government has a self-executing duty to turn over any *Giglio*-qualifying information about testifying witnesses, there is no legal authority for requiring the

Government to provide certifications that it has taken particular steps to investigate for *Giglio* material and whether the results were negative. Indeed, the Ninth Circuit has rejected similar overreaching applications of *Henthorn* in related contexts—the district courts supervisory power does not reach so far. The Ninth Circuit has recognized that the district courts lack supervisory authority to demand agency heads to "sign off" or certify regarding results of a *Henthorn* review of personnel information. *United States v. Dominguez-Villa*, 954 F.2d 562, 565 (9th Cir. 1992) ("The government next contends that the district court exceeded its authority by requiring agency counsel to review the personnel files and by requiring agency heads to "sign-off" on counsel's determination whether a particular file contains impeachment material. We agree. A district court does not have general supervisory powers over the co-equal executive branch of government. *United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir.1985)."). And the Ninth Circuit has admonished district courts to avoid interfering with the exercise of the executive branch's *Brady* obligations. *See United States v. Jennings*, 960 F.2d 1488, 1491–92 (9th Cir. 1992). The Government understands its obligation to disclose *Giglio*-covered impeachment information, and those obligations do not encompass the certifications demanded by Zogheib.

### *Demand for Information Relating to Alleged Misconduct of Special Agent Ro*

Zogheib demands all manner of records relating to alleged misconduct by a Special Agent Charles Ro, including, but not limited to records of the U.S. Senate Judiciary Committee. This request should be denied. According to a word search of the discovery produced by the Government, Agent Ro's name appears a grand total of *one time*, where he signed as the supervisory agent for an FD-1023 source reporting document. That

document does not relate to any of the events charged in the superseding indictment. Agent Ro is not a witness who will be called by the Government at trial as he did nothing whatsoever as to any of the investigation relating to the charged offenses. Supervisory review of an FD-302 is a purely administrative action with no meaningful investigative character. Even if impeachment information existed as to Agent Ro (something the undersigned prosecutor does not concede), the Government would not be required to turn that information over because Agent Ro is not a testifying witness for the Government. *See, e.g.*, *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) ("[B]ecause both the discovery order and *Giglio* apply only to impeachment information relating to a government witness, *see Giglio*, 405 U.S. at 153–55, 92 S.Ct. 763[], they are inapplicable because the government did not ever call McReynolds as a witness." (citation omitted)); *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994) (finding "no authority that the government must disclose promises of immunity made to individuals the government does not have testify at trial"). Indeed, the Government is not even obliged to examine Agent Ro's personnel file under *Henthorn* because he is not a testifying witness. *See Henthorn*, 931 F.2d at 30 (specifying obligation to search information related to witnesses "who will testify at trial"). Finally, Zogheib does not even attempt a prima facie showing as to how the information would be material under *Giglio* or *Brady*.

*Production of Task Force Officer Internal Affairs Files*

This request should be denied. The Government is not obliged to turn over internal affairs files for any Task Force Officers. Zogheib cites no legal authority whatsoever for such a demand. The Government understands its obligations under *Giglio* and its obligation to conduct reviews for impeachment information under

*Henthorn.* Neither obliges the Government to turn over internal affairs files (if any even exist).

### 2) Demand for Confidential Human Source (CHS) Discovery (2(a)-(o); (q)-(r))

This request should be denied. In an overabundance of caution, the Government turned over in discovery various recordings made of Zogheib's conversation with a confidential human source (CHS). And Zogheib has also been provided numerous FD-1023 source reporting documents relative to his contact with a CHS. None of this material relates to the charges in the superseding indictment and is not material to any defense. The Government was not obliged to provide this material to Zogheib in the first place. Importantly, the Government does not intend to call any CHS as a witness at trial, principally because they do not have relevant testimony or evidence to provide. Zogheib's failure to explain the materiality of the requested information under Rule 16 or any other rule speaks volumes since this CHS activity and witnesses will not be presented by the Government. In light of that, the Government has no obligation to provide the requested material under *Giglio*, Rule 16, or any other basis. *See, e.g.*, *United States v. Valdes*, 214 F. App'x 948, 951 (11th Cir. 2007) ("[T]he Government had no *Giglio* obligation with regard to the confidential informant. *Giglio* requires the Government to provide impeachment information about testifying witnesses, and the informant did not testify as a witness at trial. The Government's refusal to disclose to Valdes impeachment evidence regarding its confidential informant did not violate *Giglio*." (citations and

footnote omitted)).[2]

### 3) Demand for Texts/Emails/Instant Messages/Toll Records of FBI Special Agent/TFO/CHS/Professional Support Staff (2(p))

This request should be denied. Without stating the Rule 16 materiality of this information or providing any other justification for its production, Zogheib demands a sprawling amount of information, i.e., any kind of electronic communication record "relating in any way to the investigation" ECF No. 82 at 5:10-11. None of this information is disclosable under Rule 16. To the extent any of it constitutes Jencks material, i.e., the statement of a testifying witness which concerns the witness's testimony, Congress has expressly proscribed discovery orders requiring the Government to turn such material over on a pre-trial basis. 18 U.S.C. § 3500(a)-(b).[3] And the appellate courts have reversed such orders by district courts. See, e.g., *In re United States*, 834 F.2d 283, 286–87 (2d Cir. 1987) (granting mandamus to vacate order requiring production of witness statements); *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir. 1974) (reversing

---

[2] Zogheib is a nine-time convicted felon with a criminal fraud history dating back to 1987. He has been convicted of fraud crimes in both federal and state court in Nevada. Thus, he has been a frequent subject of law enforcement investigation and interest for various crimes and misconduct outside the scope of his business investment fraud and Ponzi schemes related to the indictment. Most of the CHS reporting relates to Zogheib's claims about ties to organized crime, diamond smuggling, involvement with a stolen watch scheme, solicitation of a CHS to commit a murder, and other unrelated criminal schemes. Many matters discussed with the CHS would be irrelevant at a trial and prejudicial to Zogheib, such as Zogheib bragging about tricking prostitutes into having sex with him without payment, or Zogheib discussing his wife's accusation that he possessed child pornography.

[3] ("(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.[] (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.").

order suppressing witnesses' testimony on the grounds that the Government did not produce witness statements in advance of trial despite being ordered to do so). If any such material constitutes *Brady* or *Giglio* material, the Government appreciates its obligation to turn such material over in sufficient time for a defendant to utilize it. Zogheib will recall, however, that *Brady* and *Giglio* do not establish a pretrial right to discovery material, *Weatherford*, *supra*, and they certainly do not authorize or require Zogheib's demand for a wide scale, indiscriminate rifling through of nondiscoverable material. Finally, Zogheib's failure to allege a prima facie basis of Rule 16 materiality means the request must be denied. *Santiago*, *Mandel*, *supra*; *see also United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) ("'[T]o obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.'" (citations omitted)).

### 4) Criminal History/Investigative Files for Victim K.W. (2(s))

This request should be denied. The Government understands its obligation to turn over any *Giglio*-qualifying information relating to its testifying witnesses. The law does not contemplate a pretrial order enforcing the Government's *Brady*/*Giglio* obligations. *United States v. W. R. Grace*, 401 F. Supp. 2d 1069, 1076 (D. Mont. 2005) ("Brady imposes a self-executing constitutional obligation, and generally is not the proper subject of court rulings prior to trial."); *United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH, 2016 WL 3185008, at *2 (N.D. Cal. 2016) ("The government's *Brady* obligation is a 'self-executing responsibility on the part of the prosecutor....[T]here is no need for a court order to require compliance with *Brady*[ ].'"); *United States v. Bracamontes*, No. 7:10-CR-30-1-F, 2010 WL 2044501, at *2 (E.D.N.C. 2010) ("[T]he Government's duty under *Brady* is self-executing and no order is necessary to invoke it."). Zogheib's request also appears

to demand criminal history information or investigative files that do not constitute *Brady* or *Giglio* material. *See* ECF No. 82 at 1-2. There is no entitlement to such information under Rule 16 or any other rule (if such material exists).

**5) Criminal History/Investigative Files for Victim K.L. (2(t))**

This request should be denied. The Government understands its obligation to turn over any *Giglio*-qualifying information relating to its testifying witnesses. The law does not contemplate a pretrial order enforcing the Government's *Brady*/*Giglio* obligations. *W. R. Grace*, *Pac. Gas & Elec. Co.*, *Bracamontes*, *supra*. Zogheib's request also appears to demand criminal history information or investigative files that do not constitute *Brady* or *Giglio* material. *See* ECF No. 82 at 4. There is no entitlement to such information under Rule 16 or any other rule (if such material exists).

**6) Work Sheets/Work Papers/Notes/Reports/Forensic Exams of May 10, 2011 Email Sent to Victim K.W. (2(u))**

This request should be denied. Zogheib appears to be requesting technical information about an email, which would be held by the electronic service provider that created and serviced the email account, specifically Google. Zogheib could likely obtain that information via subpoena, but appears not to have done so. Moreover, Zogheib was the sender of the email, so he presumably knows where he was when it was sent. It is not the Government's responsibility to investigate Zogheib's defense case—whatever that alleged defense case is. He also fails to allege even a prima facie claim of materiality, which requires denial of the request per Ninth Circuit case law. *Santiago*, *Mandel*,

*Lucas, supra.*[4]

### 7) FD-302/FD-1023 Reports Relating to NSDC Prison Guards and Jeffrey Turino Accessing Other Inmates' Discovery (2(v))

This request should be denied. Some background information will assist the Court in denying this request. Jeffrey Turino (Turino) is a deceased criminal with whom Zogheib was incarcerated in the Pahrump jail while both men were under indictment for fraud-related crimes. Zogheib alleges that Turino stole Zogheib's discovery and, upon Turino being released, took up with Zogheib's now deceased wife, Donna Walker-Zogheib. Zogheib has deluged the judge in Turino's criminal case with dozens of letters trying to vindicate his grudge against Turino, thoroughly infecting the docket in that case with this time-wasting soap opera. *See, e.g., U.S. v. Jeffrey Turino, et al.*, Case No. 2:09-cr-00132-JAD-GWF, ECF No.'s 472-501; 502-504; 519. Zogheib has likewise filed civil actions against Turino in both federal and state court. *See, e.g., Zogheib v. Turino, et al.*, 2:17-cv-00873-JAD-CWH.

The Zogheib-Turino soap opera is irrelevant to the facts and evidence in this case. Zogheib has failed to allege even a prima facie claim of materiality, nor could he since it is not relevant. Even if there were FBI reports relative to these events, they would not be discoverable since they would have no bearing on the facts relevant to the indictment or any conceivable defense.

/ / /

---

[4] This failure to allege a prima facie basis of Rule 16 materiality afflicts virtually all of Zogheib's requests. He should not be permitted to allege a prima facie basis for the first time in his reply brief to which the Government will have no chance to respond. Thus, the Court should summarily deny such inadequately-pleaded requests.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

### 8)  Zogheib's Recorded Jail Calls in FBI Possession and Which Relate to the Indictment (2(w))

This request should be denied. The Government has already produced a large amount of recorded jail calls to Zogheib in discovery. The Government does not at this point intend to use any of these calls in its case-in-chief at trial (or to cross-examine Zogheib should he testify) since they do not contain relevant material. *See* Fed. R. Crim. P. 16(a)(1)(B)(i) (upon demand Government obliged to disclose "any ***relevant*** written or recorded statement by the defendant" if in its possession or reason to know it exists (emphasis added)). The Government is unaware of any "relevant" recorded jail calls in its possession, and it is not required to track down and produce irrelevant jail calls, which is all Zogheib appears to make. Moreover, Zogheib is free to subpoena his own recorded jail calls from the jail.

Zogheib's interest in his own jail calls actually appears to be motivated by his fixation on things unrelated to this case, such as his issues with Turino. *See, e.g.*, *U.S. v. Jeffrey Turino, et al.*, Case No. 2:09-cr-00132-JAD-GWF, ECF No. 481 at 2 (Zogheib letter to Judge Jennifer A. Dorsey imploring her to review all of his jail calls in order to discover misconduct by Turino); *see also* ECF No. 501 at 3. The Government first produced jails calls in discovery to Zogheib beginning on May 11, 2016. Thus, Zogheib is unlikely to have made any incriminating or relevant statements on the jail call system since first becoming aware that the Government had obtained some of his calls. He seeks them now for some other,

improper motive.

### 9) Records Regarding "Minimization"/"Segregation" Used to Avoid Review of Privileged Telephone Calls (2(x))

This request should be denied. The Government is unaware of being in possession of any of Zogheib's calls with his attorneys or any other privileged calls. Should that change, the Government will provide Zogheib and his attorney the appropriate notice and take other steps consistent with the law and rules of professional conduct. Zogheib is not entitled to the internal policy of any law enforcement agency regarding its review of recorded jail calls. And such information would not be material to anything in this case.

### 10) Reports/Notes Regarding Zogheib Jail Calls (2(y))

This request should be denied. If such material existed, it would at best constitute Jencks material if the note taker ended up testifying at trial and the notes concerned her testimony. 18 U.S.C. § 3500. Even if it exists, Zogheib is not entitled to such material at this point, since the Government is not obliged to turn over Jencks material until five days prior to trial as stipulated in its Government Disclosure Statement. ECF No. 15 at 2:11-12.

### 11) Records Regarding Travel Activity of Victim K.W. from May 1, 2011 through May 20, 2011 (2(z))

To the extent the prosecution team possesses this information it will be produced.

### 12) Records Regarding Zogheib's Travel Activity from May 1, 2011 through May 20, 2011 (2(aa))

To the extent the prosecution team possesses this information it will be produced.

/ / /

14

**13) Records of Interviews with Victim K.W. Regarding Visit to Zogheib's Yacht in San Diego in mid-2013 (2(bb))**

This request should be denied. First, it is unclear what "records" Zogheib seeks or if they even exist. And, again, such material would at best constitute Jencks material not disclosable at this point in the case or ever if the witness creating such a record does not testify.

**14) Opening Communication for FBI File 281N-2476818 (2(cc))**

This request should be denied. An opening communication document is an internal processing document that is not discoverable. It is not evidence that will be presented at trial. Likewise, it is not Jencks material since the author will not be testifying. And Zogheib fails to allege even a prima facie basis for any opening communication documents being material to any trial defense. *Santiago*, *Mandel*, *Lucas*, *supra*.

**15) Serial 13 of 318B-LV-41778-GJ (2(dd))**

This request should be denied. Under bates stamp #: 006736, Zogheib was provided FBI's record indicating that the Serial 13 of this casefile was deleted because the document had been uploaded inadvertently, and thus had been placed in the wrong casefile. Zogheib is not entitled to this material because it does not relate to his case.

**16) Opening Communication for 318B-LV-41778 (2(ee))**

This request should be denied. An opening communication document is an internal processing document that is not discoverable. It is not evidence that will be presented at trial. Likewise, it is not Jencks material since the author will not be testifying. Zogheib fails to allege even a prima facie basis for any opening communication

documents being material to any trial defense. *Santiago*, *Mandel*, *Lucas*, *supra*.

### 17) Sentinel Listing/Index of "1As" (2(ff))

This request should be denied. The listing or index in Sentinel reflects the administrative internal case management system of FBI and is not a discoverable item under Rule 16, Jencks, or any other rule. Zogheib fails to allege even a prima facie basis for this information being material to any trial defense. *Santiago*, *Mandel*, *Lucas*, *supra*.

### 18) Reports/Notes of Government Agents Listening to Zogheib's Recorded Calls (2(gg))

This is a duplicative request and should be denied for the reasons already stated above.

### 19) Records Regarding Travel Activity of Victim K.W. from May 1, 2011 through May 20, 2011 (2(hh))

This request should be denied because it is duplicative and identical to another request.

### 20) Records Regarding Zogheib's Travel Activity from May 1, 2011 through May 20, 2011 (2(ii))

This request should be denied because it is duplicative and identical to another request.

### 21) Records of Interviews with Victim K.W. Regarding Visit to Zogheib's Yacht in San Diego in mid-2013 (2(jj))

This request should be denied because it is duplicative and identical to another request.

### 22) Opening Communication for FBI File 281N-2476818 (2(kk))

This request should be denied because it is duplicative and identical to another request.

1

**23) Serial 13 318B-LV-41778-GJ (2(ll))**

2

3

This request should be denied because it is duplicative and identical to another request.

4

**24) Opening Communication for 318B-LV-41778 (2(mm))**

5

6

This request should be denied because it is duplicative and identical to another request.

7

**25) Sentinel Listing/Index of "1As" (2(nn))**

8

9

This request should be denied because it is duplicative and identical to another request.

10

11

**26) Communications Establishing a "Shadow Prosecution"/Vindictive Prosecution/Non-Adherence to Petite Policy/Selective Prosecution/Outrageous Government Conduct (2(oo))**

12

13

14

15

16

17

18

19

20

21

22

23

This request should be denied. It is unclear what Zogheib means by a "'shadow prosecution.'" Rule 16, Jencks, and *Brady/Giglio* do not create a basis for a pretrial discovery order to produce evidence of a "vindictive prosecution" or "outrageous government conduct," which is also a vague term unexplained by Zogheib's motion. The Government assures Zogheib that he is being prosecuted based on the danger he poses to the community, rather for some improper purpose. To the extent Zogheib requests information relative to alleged violations of the Department of Justice's "Petite Policy," such information is not discoverable particularly because that policy is not enforceable in court and confers no rights on a criminal defendant. *United States v. Mitchell*, 778 F.2d 1271, 1276 (7th Cir. 1985) ("[T]he 'Petite Policy,' since it is an internal guideline for the exercise of prosecutorial discretion, does not create a substantive right for the defendant which he may enforce, and is not subject to judicial review."(citations

24

omitted)).

**27) Records Regarding the Seeking or Obtaining of 2703(d) Orders Related to Zogheib, P.N., K.W., K.L. from Google, MGM Resorts International and Related Entities, Wells Fargo Bank, and Any Other Financial Institution (2(pp))**

This request should be denied. There is no rule of discovery that would require the production of "records, email, text, EC's[,] FBI Tech Request Forms or other evidence" regarding the seeking of an order under 18 U.S.C. § 2703(d). Such documents (if they even exist) would not be items the Government presents as evidence at trial. And even if they constituted statements of testifying witnesses that concerned the testimony, i.e., Jencks material, the Government in this case has no obligation to produce them earlier than five days before trial.

**28) Divorce Records Related to Financial Aspects of Victim P.N.'s Divorce Proceedings (2(qq))**

This request should be denied. If Zogheib wants to investigate his victim's divorce records in order to find impeachment material, he needs to go seek those records out for himself. The Court has authorized payment for an investigator for Zogheib; presumably that person can investigate this issue for Zogheib. Assuming he finds some embarrassing material about Zogheib's victim, that material will not be relevant and will be subject to exclusion under the Federal Rules of Evidence.

**29) Bankruptcy Records Related to Victim K.L. (2(rr))**

This request should be denied. If Zogheib wants to investigate his victim's alleged bankruptcy records in order to find impeachment material, he needs to go seek those records out for himself. The Court has authorized payment for an investigator for Zogheib; presumably that person can investigate this issue for Zogheib. Assuming he

finds some embarrassing material about Zogheib's victim, that material will not be relevant and will be subject to exclusion under the Federal Rules of Evidence.

### 30) Emails/Texts/Reports of Interviews of Steve Saum on November 8, 2016 in Pahrump Nevada (2(ss))

This request should be denied. It is unclear to the undersigned prosecutor who Steve Saum is, although he appears to be a figure from the Zogheib-Turino soap opera. *See U.S. v. Jeffrey Turino, et al.*, Case No. 2:09-cr-00132-JAD-GWF, ECF No. 519 (Zogheib-filed cease-and-desist letter from Zogheib to Steve Saum and Diane Saum accusing them of aiding and abetting Turino's alleged sexual and mental abuse of Zogheib's wife Donna Walker-Zogheib). This material (if it exists) is in no way relevant to anything in this case.

### 31) Emails/Texts/Reports of Interviews of Donna Walker-Zogheib on November 8, 2016 in Pahrump Nevada (2(tt))

This request should be denied. Donna Walker-Zogheib is deceased and will not be a witness for the Government in this case. Any emails, texts, or reports about any interview would be inadmissible hearsay and are not discoverable under Rule 16 or any other rule. Zogheib fails to even allege a prima facie reason for the materiality of such documents, thus the Court must deny the request. *Santiago*, *Mandel, Lucas*, *supra*.

### 32) Records of Contact with Nye County Sheriff Sharon Wehrly Regarding Steve Saum, Zogheib, Nye Counties Technologies, Inc., or Jeffrey Turino (2(vv))

This request should be denied. It appears that, in order to placate his client, Zogheib's attorney is propounding discovery requests designed to obtain for Zogheib material that would be relevant only to the Zogheib-Turino soap opera. This material has no relation to the events to be tried in this case.

19

**33) Reports of Interview with Cynthia Taylor Miller (2(ww))**

This request should be denied. The undersigned believes Cynthia Taylor Miller to be a former employee of the jail where Zogheib has been detained pending trial. Zogheib appears to believe that Ms. Miller removed his discovery from the jail. Other than Zogheib's allegations, the Government is aware of no evidence to support Zogheib's belief; as a nine-time convicted felon and six time misdemeanant—all for fraud-related crimes—Zogheib's allegations are inherently incredible. But even assuming someone removed Zogheib's discovery from the jail, such an event has zero relevance to this case.

**34) Wire Transfer Records for February 25, 2011 $268,000 Wire Transfer (2(xx))**

To the extent the prosecution team possesses this information it will be produced.

**35) Grand Jury Transcripts Relating to Zogheib in 2012-R01002 or 2014-R01942 2(yy))**

This request should be denied. If any transcripts of witness testimony were produced in the course of grand jury proceedings related to Zogheib, they are secret and remain sealed. Fed. Rule of Crim. Proc. 6(e)(2) The only circumstances under which they would be produced to Zogheib is if they constitute Jencks material—in which case, the Government only needs to produce them five days prior to trial. The Ninth Circuit and all other courts have imposed an extremely high burden for defendants to obtain an order piercing the 6(e) secrecy of grand jury transcripts. *United States v. Caruto*, 627 F.3d 759, 768 (9th Cir. 2010) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)) ("Parties seeking grand jury transcripts under Rule 6(e) of the Federal Rules of Criminal Procedure must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the

need for continued secrecy, and that their request is structured to cover only material so needed."). Given that Zogheib has failed to allege even a conclusory or prima facie entitlement to grand jury transcripts this request must be summarily denied.

### 36) Any Records Regarding the U.S. Securities and Exchange Commission Regarding Nye Technologies, Inc. (2(zz))

This request should be denied. Nye Technologies, Inc. and the Securities and Exchange Commission appear to have nothing to do whatsoever with this case. This appears to be another instance of Zogheib using discovery in this fraud case to obtain information about all manner of unrelated things merely because they interest him. Like all of his other requests, Zogheib has failed to provide even a conclusory or prima facie explanation of how this requested material is discoverable or relates to the case.

### 37) Recordings/Records of Conversation Between Donna Walker-Zogheib and Zogheib (2(aaa))

This request should be denied. It is unclear what "records" Zogheib seeks, or when the alleged conversations took place. As already noted, Donna Walker-Zogheib is deceased and will obviously not be a Government witness at trial. And Zogheib was a participant to any of the alleged conversations, thus he already has access to any information that would assist his defense. Any reports of what Donna Walker Zogheib or Zogheib said in conversations would be hearsay and inadmissible since Donna Walker-Zogheib is deceased and Zogheib cannot introduce his own statements into evidence. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 802(d)(2) ... does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses." (emphasis in original)).

/ / /

21

**38) Page 2 of FD-302 Report for Interview with Victim K.W. (2(bbb))**

This request should be denied. The Government has produced page 2 of this FD-302 under bates stamp #: 002731. That second page of the report contains a header but no additional report narrative. This appears to be the result of the writer leaving additional blank spaces in the document, which caused a second page with no text to be generated. The undersigned has confirmed that nothing was redacted from the document.

**39) Copy of Federal Grand Jury Subpoena 005 Under 2012-R01002-005**

This request should be denied. A grand jury subpoena is not a discoverable item of evidence under any rule. And Zogheib fails to articulate even a conclusory basis for why he is entitled to a copy of the subpoena. The subpoena is likewise not a statement of a testifying witness and is not covered by the Jencks Act. Zogheib again fails to allege a prima facie claim of Rule 16 materiality and the request must be denied. *Santiago*, *Mandel*, *Lucas*, *supra*.

**40) Copy of Recording and Related Reports for Recording of Zogheib on August 13, 2013**

This request should be denied. The Government has produced a copy of this recording to Zogheib in discovery even though it appears of only marginal reference. To the extent Zogheib requests all manner of associated reports, he has no entitlement to such material. He has nevertheless already been provided in discovery the recording's corresponding FD-1023 summary report.

/ / /

/ / /

### D. Zogheib Has No Entitlement to Have the Prosecuting Attorneys Ordered to Engage in the Particular Actions Demanded in the Motion—their Duties Are Self-Executing

Zogheib engages in a litany of allegations and hyperbole about the Government, and then demands the prosecutors be ordered to take certain actions. *See generally* ECF No. 82 at 15:10-16:25. Much of these allegations appear to relate to a different case. For instance, Zogheib references exculpatory evidence proving that the victim was shot by someone else. ECF No. 13:18-20 ("In this case, for instance, the Government has taken the position that *Brady* does not require disclosure of evidence that a particular victim was not shot by any of these defendants."). This appears to relate to a different case since Zogheib is not alleged to have shot anyone. So when Zogheib complains of prosecutorial "foot-dragging" and a "win-at-all-costs attitude," *id.* at 15:17; 15:21, it is unclear which case or to whom he is referring. When he complains of a "preliminary and limited production of discovery documents," *id.* at 15:10, he appears to be referring to another case since that description is at odds with his complaint in a prior motion that the Government has provided too much discovery. *See* ECF No. 41 at 4:10 (Zogheib motion referring to discovery as "voluminous"). Zogheib's effort elsewhere to malign the entire U.S. Attorney's Office is desperate, undignified, and not particularly helpful in assisting the Court's analysis. *See* ECF No. 82 at 15:26-28; 16:19-24.

Upon this shaky foundation, Zogheib demands that the Court order the Government attorneys to conduct certain investigations. *Id.* at 16:8-10. He also demands an order "allow[ing him] to question the government's attorney and the government's agents concerning their knowledge of exculpatory evidence and diligence in attempting to locate such evidence." *Id.* at 16:10-13. Such orders go outside the scope of a defendant's

23

entitlement to discovery in a criminal case, and would also exceed the Court's supervisory power were they to be ordered. *Cf., e.g.*, *Dominguez-Villa*, *Jennings*, *supra*. And the law is clear that the Government prosecutors' *Brady/Giglio* obligations are self-executing and not susceptible to enforcement through pretrial orders by a district court. *W. R. Grace*, *Pac. Gas & Elec. Co.*, *Bracamontes*, *supra*. The Government understands its obligations in discovery and will comply with them.

### III.    Conclusion

WHEREFORE, after consideration of the included facts, points, authorities, exhibits, and arguments, the United States respectfully requests that this Court DENY Zogheib's "Motion for Favorable Evidence."


DATED this 2nd day of February, 2018.

Respectfully submitted,

DAYLE ELIESON
United States Attorney

//s//

PATRICK BURNS
Assistant United States Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## **<u>Certificate of Service</u>**

I, Patrick Burns, hereby certify that I am an employee of the United States Department of Justice, and that on this day I served a copy of the following: **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT ZOGHEIB'S "MOTION FOR FAVORABLE EVIDENCE" [ECF No. 82]**, upon counsel for all defendants appearing in this matter via the CM/ECF system, by electronically filing that document.

Dated: February 2, 2018

/s/    Patrick Burns
PATRICK BURNS
Assistant United States Attorney
District of Nevada