UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

JIHAD ANTHONY ZOGHEIB,

Defendant.

Case No. 2:16-cr-00057-LRH-VCF

ORDER

Defendant Jihad Anthony Zogheib has filed a motion to "Correct or Reduce Sentence Pursuant to [Federal Rule of Criminal Procedure 35(a)]." (ECF No. 202). Pursuant to the Court's November 8, 2019 order (ECF No. 212), the United States filed a response (ECF No. 214) and Zogheib filed a reply (ECF No. 216). For the reasons stated below, the Court will deny Zogheib's Rule 35(a) motion.

**I. Factual Background and Procedural History**

Zogheib was originally indicted on February 23, 2016, with five counts of wire fraud and two counts of money laundering. (ECF No. 1). A superseding indictment was filed in April 2016, charging him with eight counts of wire fraud and two counts of money laundering. (ECF No. 23). More than two years later, Zogheib pleaded guilty to the eight counts of wire fraud, with the two counts of money laundering being dismissed by stipulation of the government. (ECF No. 140). The conduct underlying Zogheib's guilty pleas is relatively straightforward – Zogheib solicited large loans from individuals while representing that they would be used to fund his various business ventures, such as home renovation or construction crane rental. Instead of using the

1

money for that end, he used it for personal expenses, such as gambling trips to casinos in Las Vegas. (ECF No. 132 at 4–6). Zogheib also used the money to run a ponzi scheme whereby he solicited loans from new victims to repay other victims when they became suspicious or started asking for their money back. (*Id.*). His victims in this federal case have been identified by the initials of K.L., K.W., and P.N. Zogheib's conduct spanned from February 2011 to June 2013.

While this case was proceeding, Zogheib was incarcerated in the Nevada state prison system stemming from his probation on state convictions being revoked following multiple probation violations. In 2011, Zogheib was charged with fraud and theft in state court for defrauding three victims – E.A., D.T., and L.N. D.T. and L.N. do not have any relation to the current case, but Zogheib used money he received from E.A. to make partial repayments to K.W. He pleaded guilty to those charges and was given a sentence suspended with five years of probation, and he was required to pay approximately $300,000 in restitution. Zogheib's probation was revoked in 2016, and he is currently in state prison serving a 76 to 192-month sentence.

Following Zogheib's October 2018 guilty plea, sentencing was delayed for nearly a year while Zogheib engaged in disputes with a series of appointed counsel and repeatedly sought extensions to file evidentiary objections. Sentencing was eventually conducted on October 16, 2019, and during the four-hour hearing, the Court reviewed the parties' extensive evidence, heard arguments from counsel, and listened to Zogheib directly. The Court granted the government's request for an upward variance, although not as great as the upward variance of a 180-month sentence recommended by the U.S. Probation Office, and sentenced Zogheib to 96 months incarceration to run concurrent with his state sentence. (ECF No. 197). The Court also ordered Zogheib to pay $1,751,475 in restitution to his various victims. (ECF No. 199). Shortly after sentencing, Zogheib filed the motion pending before the court to correct or reduce his sentence under Federal Rule of Criminal Procedure 35(a). (ECF No. 202).

## II. Legal Standard

Federal Rule of Criminal Procedure 35(a) states that "within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." The scope of review of Rule 35(a) is intended to be extremely narrow; the court cannot reconsider

1  sentencing issues or reopen issues previously resolved under the guidelines. *U.S. v. Mack*, 92

2  F.Supp.3d 1006, 1008 (D. Nev. 2015) (citing *U.S. v. Aguirre*, 214 F.3d 1122, 1126 (9th Cir. 2000)).

3  ### III. Discussion

4  Zogheib's motion raises two main grounds for correction of his sentence. First, he argues

5  that the Court incorrectly found that his fraudulent schemes resulted in a loss of more than

6  $1,500,000, as he claims that he actually caused a loss of less than $1,500,000. (ECF No. 202-1 at

7  3). The Court's finding that Zogheib inflicted a loss of more than $1,500,000 increased his offense

8  level by 16 instead of 14, resulting in a total offense level of 21 rather than 19. U.S.S.G. §2B1.1.

9  Second, he argues that Court erred by applying an upward variance based on his criminal history

10  and not applying a downward variance for time he has already served in state custody. (ECF No.

11  202-1 at 9).

12  As the government asserts, neither of Zogheib's arguments are proper grounds for a Rule

13  35(a) motion. (ECF No. 214 at 3). The amount of loss caused by Zogheib's schemes was relevant

14  only because it affected what his offense level would be under the sentencing guidelines, and a

15  Rule 35(a) motion cannot be used to relitigate guidelines arguments. *U.S. v. Mack*, 92 F.Supp.3d

16  1006, 1008 (D. Nev. 2015). Similarly, the Court has discretion whether to grant an upward or

17  downward variance based on a particular defendant's characteristics and history. *Gall v. U.S.*, 552

18  U.S. 38, 51 (2007) (sentences in or out of the guidelines are reviewed under an abuse of discretion

19  standard). *See also Irizarry v. U.S.*, 553 U.S. 708, 713–16 (2008) (district court is not required to

20  give advance notice of its intent to impose a sentence outside the advisory guidelines range). But

21  even if Zogheib's arguments were proper under Rule 35(a), an analysis of their substance reveals

22  that they either lack merit or are transparent attempts to obfuscate evidence and mislead the Court.

23  The Court will address each of them briefly.

24  ### A. Guideline Loss Calculation

25  Zogheib first argues that the Court incorrectly determined that he inflicted a loss of $300,00

26  on victim K.W. (ECF No. 202-1 at 5–6). He argues that because he repaid K.W. more than what

27  he was lent on the first three loans, he should receive a $135,000 offset on the fourth loan that he

28  did not repay. (*Id*.) This is a frivolous argument. Zogheib has admitted that pursuant to the terms

of the loans between him and K.W., Zogheib was obligated to pay K.W. interest at a flat rate. (*Id.*). The evidence produced indicates that on the three loans which Zogheib actually repaid, he paid interest. But Zogheib cannot plausibly argue that he should receive an offset on the loan he did not repay because he repaid K.W. the proper amount on the first three loans.

As to victim K.L., Zogheib argues that because K.L. allegedly took possession of a house Zogheib owned valued at "an amount exceeding one million dollars" following discovery of the fraud, the value of the house should offset the $548,000 out of which Zogheib defrauded him. (ECF No. 202-1 at 6–7). Zogheib's argument fails for three independent reasons. First, Zogheib has not submitted any evidence that he actually owned this house. Second, the government has submitted compelling evidence demonstrating that Zogheib never had any ownership interest in the house. (ECF No. 186 at 22). Specifically, the government cited to a deposition Zogheib took in a civil action K.L. filed against him after discovering the fraud. (*Id.* at 23). In that deposition, Zogheib denied owning the house, claiming that he was only renting it. (ECF No. 186-10 at 4). Third, even if Zogheib had owned the house, K.L would have taken possession of it after discovering Zogheib's fraud scheme and filing a lawsuit against him. A defendant cannot offset an amount of loss when the victim recovers after the offense was detected. U.S.S.G. §2B1.1(b)(1) cmt. n. 3(E)(i) (requiring that for the defendant to receive a reduction to the loss caused, payment to the victim must be made before the fraud is detected). *See also U.S. v. Maisonet-Gonzalez*, 785 F,3d 757, 763 (1st Cir. 2015) (defendant could not offset loss amount where the victim filed a lawsuit and obtained restitution via a settlement agreement).

Turning to victim P.N., Zogheib points to a screenshot of a text message purportedly showing that Zogheib repaid P.N. the $367,475 that P.N. lent him (ECF No. 202-1 at 7). This screenshot indicates that P.N. told Zogheib that "I have the cash from u [sic]." (*Id.*) This is a misleading argument and fails for multiple reasons. Zogheib does not provide any evidence that he and P.N. were discussing the series of outstanding loans P.N. had lent to him. This is likely because text messages from the same conversation, provided by the government, indicate that Zogheib and P.N. were discussing tickets to a boat show, not Zogheib's loans. (ECF No. 214-1 at 1). The government produced messages between Zogheib and P.N.'s manager, wherein the

4

manager (several months after Zogehib's exchange about the boat show) demanded that Zogheib return P.N.'s money. (ECF No. 214-3 at 1). The government has also provided a copy of a civil judgment from California that P.N. obtained against Zogheib for fraud, which completely undermines Zogheib's claim that he repaid P.N. (ECF No. 186-21 at 3). The Court finds that P.N. was not repaid.

Lastly, Zogheib argues that the Court erred regarding the amount of loss ascribed to victim E.A. by "rel[ying] solely on the FBI 302" as evidence of the caused loss. (ECF No. 202-1 at 8). Zogheib also accuses an uncharged third party, Csaba Meiszburger, of being involved in defrauding E.A. (*Id*.) Prior to sentencing, the government provided a copy of E.A.'s FBI interview, wherein he details Meiszburger's and Zogheib's scheme to defraud him. (ECF No. 186-15). Briefly summarized, Meiszburger, a friend of E.A.'s, solicited E.A. to loan him approximately a million dollars for various business ventures and personal expenses. (*Id*. at 1–3). One of these requests was for a $250,000 loan for a friend of his, who was later revealed to be Zogheib. (*Id*. at 2). Meiszburger promised E.A. a return of $275,000 for the loan, and to induce E.A. into providing it, he showed E.A. what he claimed was Zogheib's bank account with a balance of $32,000,000. (*Id*.) Meiszburger also gave E.A. a check signed by Zogheib for $275,000, telling him that in the event he did not receive his money back by a certain date, he could cash the check. (*Id*.) Both the bank account balance and the check turned out to be phony, and the government has provided ample proof of the falsity and fraud to the Court. That alone is strong evidence that Zogheib defrauded E.A., but the fact that E.A. obtained a civil judgment against Zogheib for $275,000 is further proof that Zogheib indeed stole money from him.

Zogheib's objections to the loss amount are without merit. The government has provided substantial evidence that demonstrates by clear and convincing evidence – and certainly by a preponderance standard – that Zogheib defrauded his victims out of a combined total of $1,751,475. His motion is accordingly denied on the loss calculation grounds.

## B. Variances

Zogheib appears to make three separate arguments related to variances he argues should have been ruled on in his favor. First, he argues that the Court was required to give him credit for

the time he has served in state custody because his underlying state conviction constitutes relevant conduct for sentencing purposes. (ECF No. 202-1 at 13). U.S.S.G. §5G1.3(b) provides that if a defendant is serving a sentence that constitutes relevant conduct to the instant offense, the Court must impose the sentence to run concurrently to the existing sentence. But when that sentence only constitutes partly relevant conduct, the Court has discretion whether or not to give the defendant credit for the time served. *See U.S. v. Kimble*, 107 F.3d 712, 714–15 (9th Cir. 1997) (holding that §5G1.3(b) does not apply when the underlying sentences resulted from multiple offenses, only some of which are used to adjust an offense level). This is the case here. As the Court explained at the sentencing hearing, Zogheib's victims in the federal case were K.L., K.W., and P.N. In the state case, his victims were E.A., D.T., and L.N. While Zogheib used money stolen from E.A. in an effort to prevent K.W. from detecting his scheme, victims D.T. and L.N. have absolutely no relation to the federal case (Zogheib solicited them for money for use in what he claimed to be a home renovation business which turned out to be fake). As such, the Court retained discretion under U.S.S.G. §5G1.3(d) to give Zogheib credit for time served or not, and the Court used its discretion to deny him that credit.

Zogheib's second argument is related to the first – he argues that the Court erred when it left the calculation of any credits for time served in federal custody to the Bureau of Prisons ("BOP"). (ECF No. 202-1 at 18). As the Court has repeatedly informed Zogheib throughout these proceedings, only the Attorney General (through the BOP) has the authority to calculate any credits for time served in federal custody and good conduct time credits; the BOP also determines when a defendant's federal sentence starts. *U.S. v. Wilson*, 503 U.S. 329, 331–32 (1992); *Allen v. Crabtree*, 153 F.3d 1030, 1033 (9th Cir. 1998); *U.S. v. Montez-Gaviria*, 163 F.3d 697, 700–01 (2d Cir. 1998). As the Supreme Court explicitly stated in *Wilson*, "[w]e do not accept [appellee's] argument that [18 U.S.C.] §3585(b) authorizes a district court to award credit at sentencing." *Wilson*, 503 U.S. at 333.

Zogheib's third argument asserts that the Court abused its discretion by giving him an upward variance based on his criminal history. (ECF No. 202-1 at 15). This too is a frivolous argument, as it essentially asks the Court to reweigh the 18 U.S.C. §3553(a) factors and give

1    Zogheib a lesser sentence. At sentencing, the Court determined that Zogheib's criminal history

2    was vastly understated as a category III and granted the government's request for an upward

3    variance to category VI. This changed Zogheib's guidelines range from 46–57 months to 77–96

4    months, with the Court determining that when considering all the §3553(a) factors, a sentence of

5    96 months was appropriate.

6          In applying the upward variance, the Court discussed Zogheib's lengthy history of fraud.

7    Zogheib has over fifteen felony and misdemeanor convictions for some type of fraud that span his

8    entire adult life, with his first fraud conviction occurring in 1986 when he was only 19 years old.

9    But despite his fifteen convictions for fraud related offenses, Zogheib was only assigned a criminal

10   history category of III because of the remoteness of a number of the prior offenses, and he was not

11   assigned any criminal history points for his undischarged state sentence because that sentence is

12   considered partly relevant conduct to the instant offenses. What is notable about Zogheib's

13   criminal history is that as he grew older, the amounts of money he stole significantly increased,

14   starting with a few hundred dollars and ending up at a $1.7 million dollar loss in this case. Most

15   of the punishments he received were extraordinarily lenient, never spending more than five months

16   in jail until his fourteenth conviction for fraud, a February 2005 felony conviction for bank fraud

17   in this federal district.

18         In this federal case, at the age of 52, Zogheib has increased his lifetime total of eleven

19   felony convictions to a total of nineteen felony convictions. His ninth, tenth, and eleventh felony

20   convictions – none of which are the result of this case – are concerning. His ninth felony conviction

21   involved a bank fraud scheme perpetrated in 2003 in which the victim bank suffered a loss of

22   approximately $993,600. Zogheib deposited four fraudulent checks into the bank, but before the

23   bank could discover that they were phony, Zogheib withdrew over $900,000.

24         The facts of that case[1] are highly concerning to the Court and indicative of Zogheib's

25   continued lack of remorse for his actions. Zogheib was sentenced in this Court to a relatively

26   lenient sentence of 37 months in prison with five years of supervised release to follow. After his

27   release from prison and not even halfway through his term of federal supervision, Zogheib

28

[1] Case No. 2:05-cr-00259-BES-RJJ.

purchased a luxury sports car from a Ferrari dealership in California with a bad check, but before the dealership could discover the fraud, Zogheib sold the car at an auction. Zogheib purchased or leased several other luxury automobiles from the same dealership in California for use in his auto rental business, a business that the terms of his supervised release prohibited him from operating. These transactions were all completed using fraudulent checks. Zogheib traveling to California also violated a requirement of his supervised release that he not leave the District of Nevada without first obtaining permission from his probation officer, which he never requested or obtained. It was also noted that throughout his supervision, Zogheib consistently lied to his probation officer about his conduct, denying that he had gambled (which he was prohibited from doing) or had traveled to California. Given his numerous violations (which also included stealing approximately $100,000 from a bank following a clerical error), Zogheib's supervised release was revoked, and he was sentenced to an additional 18 months of imprisonment.

Zogheib is no stranger to failing to abide by the terms of his probation or supervised release. Zogheib's supervised release was also revoked in his current state case, and while on federal supervision following an October 2002 conviction for passport fraud, he was dishonest with his probation officer regarding his employment and business transactions.[2] This pattern of deceit while on state and federal supervision is strong evidence that Zogheib has no respect for either the court system or the laws of Nevada or the United States.

Zogheib's tenth and eleventh felony convictions involve conduct committed in 2011 when, at the age of 44, he defrauded a series of victims of funds in excess of $310,000. Although he initially received probation, as noted above, that probation was revoked in 2016, and he currently is serving a sentence of 76 to 192 months in a Nevada prison. His twelfth through nineteenth felony convictions for wire fraud are the matter for which he has most recently been sentenced before this Court. It involved a series of fraudulent schemes beginning in February 2011 in which five victims suffered losses in excess of $1,715,000.

///

---

[2] According to the Presentence Report prepared by the U.S. Probation Office for this case, Zogheib has no verifiable employment history despite being 52 years old.

Throughout his 34-year involvement in the criminal justice system, Zogheib has repeatedly represented to state and federal courts that he is remorseful for his actions, and he has promised to change his behavior if given another chance. But despite being repeatedly shown leniency, he has always returned to a life of crime. Simply put, Zogheib has spent virtually his entire adult life defrauding innocent victims and financial institutions. Monetary fines, short periods of incarceration, and even longer prison sentences have not deterred him.

In this action, Zogheib pleaded guilty to eight counts of wire fraud (violations of 18 U.S.C. §1343), and he was eligible for a maximum prison sentence of twenty years on each of the eight new felony convictions. On the basis of Zogheib's extraordinary criminal history partially detailed above, after carefully considering the guideline analysis and applications and finding his criminal history calculation under the guidelines to be so understated that an upward variance under 18 U.S.C. § 3553(a) was clearly warranted, the Court accepted the recommendation by the Assistant U.S. Attorney prosecuting the case for a 96-month sentence. This sentence was deemed by the Court to be "more than fair" to provide just punishment for Zogheib's multiple offenses, to promote respect for the law, to provide adequate deterrence to criminal conduct, and to protect the public from further crimes by Zogheib. Although the sentence imposed could well have been significantly higher, the Court is satisfied that it is an appropriate sentence in consideration of the relevant factors identified herein and within the Presentence Report and Sentencing Memoranda.

## IV. Conclusion

IT IS THEREFORE ORDERED that defendant Jihad Anthony Zogheib's motion to correct or reduce his sentence (ECF No. 202) is **DENIED**.

IT IS SO ORDERED.

DATED this 8th day of January 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE