# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

     Plaintiff/Respondent

v.

Jihad Anthony Zogheib,

     Defendant/Petitioner

Case No.: 2:16-cr-00057-JAD-VCF

**Order Granting Petitioner's Motion to Amend but Denying Petitioner's Motions for § 2255 Relief, to Seal, for Compassionate Release, and for a Sentence Reduction**

[ECF Nos. 279, 280, 281, 283, 289]

     Defendant and petitioner Jihad Anthony Zogheib pled guilty to eight counts of wire fraud and was sentenced in 2019 by the late United States District Judge Larry R. Hicks. After a semi-successful appeal on some loss-calculation and restitution issues, Zogheib was resentenced to 96 months imprisonment and ordered to pay more than one million dollars in restitution to the victims of his fraud scheme. Zogheib now moves for several forms of relief. He seeks habeas relief under 28 U.S.C. § 2255 on the basis that he received ineffective assistance of counsel during plea negotiations and at sentencing. He also moves to amend his § 2255 motion to supply more factual and legal arguments to support his claims, and to seal the exhibits he attached to that motion. Zogheib further seeks a sentence reduction under newly enacted Amendment 821, which permits sentencing recalculations related to "status points" used to assess certain criminal-history points. And he asks for compassionate release based on the Federal Bureau of Prison's (BOP) allegedly incorrect calculation of his sentence and due to longstanding family circumstances.

     I grant Zogheib's motion to amend his habeas motion, but deny him relief under § 2255 because his ineffective-assistance claims fail as a matter of law. I also deny his motion to seal

because none of the documents he attached warrants sealing.  I further deny Zogheib's motions for a sentence reduction and for compassionate release because he has not shown that he is entitled to either form of relief.

## Background

### A.    Zogheib's plea, sentence, and appeals

In 2016, the government indicted Zogheib on charges that related to him operating a business-investment fraud scheme beginning in 2010.[1]  Originally the indictment included five counts of wire fraud and two counts of money laundering.[2]  But a superseding indictment was filed shortly after the original indictment, charging Zogheib with eight counts of wire fraud and two counts of money laundering.[3]  In October 2018, Zogheib pled guilty—without a plea agreement—to the eight wire-fraud counts, and the court granted the government's unopposed motion to dismiss the two remaining money-laundering counts.[4]

Following Zogheib's October 2018 guilty pleas, sentencing was delayed for nearly a year while Zogheib engaged in disputes with his appointed counsel and repeatedly sought extensions to file evidentiary objections.  Sentencing eventually happened on October 16, 2019, and during the four-hour hearing, the court reviewed the parties' extensive evidence, heard arguments from counsel, and listened to Zogheib directly.[5]  The court granted the government's request for an upward variance, although not as great as was recommended by the U.S. Probation Office, and sentenced Zogheib to 96 months incarceration to run concurrent with a sentence he was serving

---

[1] ECF No. 1.

[2] *Id.*

[3] ECF No. 23.

[4] ECF Nos. 140, 144.

[5] ECF No. 197.

on Nevada state-court convictions.[6]  The court also ordered Zogheib to pay restitution to his victims.[7]

Zogheib appealed, and the Ninth Circuit affirmed certain aspects of the court's loss calculation for sentencing purposes but vacated the loss amount attributed to one of Zogheib's victims and the amount of restitution owed to another.[8]  Since Zogheib's sentencing range under the United States Sentencing Guidelines was dependent on the proper calculation of the loss amount of Zogheib's victims, the Ninth Circuit remanded the case so that the court could reconsider Zogheib's sentence.[9]

On remand, the court held a sentencing hearing on October 6, 2021, and reviewed the parties' extensive evidence, heard arguments from counsel, and listened to Zogheib directly.  The court, yet again, granted the government's request for an upward variance, sentenced Zogheib to 96 months incarceration to run concurrent with the sentence he was serving on his state-court convictions, and ordered Zogheib to pay restitution to his victims.[10]  Zogheib appealed, and that time the Ninth Circuit affirmed.[11]

**B.   Zogheib's pending motions**

On November 3, 2023, Zogheib filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[12]  Two weeks later, he moved to amend his petition to "set forth

---

[6] *Id.*

[7] ECF No. 199.

[8] *United States v. Zogheib*, 843 Fed. App'x 69 (9th Cir. 2021).

[9] *Id.* at 73.

[10] ECF Nos. 259, 261.

[11] *United States v. Zogheib*, 2022 WL 15798663, at *2 (9th Cir. 2022).

[12] ECF No. 279.

additional grounds for relief" and requested that various exhibits attached to his amended petition be sealed.[13]  The next month, Zogheib filed a motion for a sentence reduction under United States Sentencing Commission Guideline Amendment 821, and the Federal Public Defender filed a notice determining that Zogheib is not eligible for a sentence reduction under that amendment.[14]  And in January 2024, Zogheib filed a motion for compassionate release, arguing that the BOP miscalculated his sentence and that his family circumstances warrant his release.[15]

The government responded only to Zogheib's motions related to his § 2255 petition.[16]  It does not oppose Zogheib's motion to amend, and didn't file a response to his motion to seal because it was filed *ex parte*.  But it opposes Zogheib's § 2255 petition on the merits, arguing that he has not shown that his trial counsel's performance was deficient or prejudicial.[17]  Zogheib filed an untimely reply.[18]

---

[13] ECF Nos. 280, 281.

[14] ECF Nos. 283, 287.

[15] ECF No. 289.

[16] ECF No. 288.

[17] *Id.*

[18] About a month after the government filed its opposition, Zogheib alerted the court that he'd never received it.  ECF No. 290.  The court ordered the Clerk of Court to send Zogheib the response and various other docket entries and extended Zogheib's reply deadline.  ECF No. 291. Zogheib then moved to extend his reply deadline again, and the court granted him a 30-day extension.  ECF No. 293.  Zogheib missed that deadline by seven days.  I nevertheless consider Zogheib's late reply, but it merely reiterates his previous arguments, which, for the reasons contained in this order, are meritless.

**Discussion**

**A.     Justice requires that Zogheib be permitted to amend his § 2255 motion.**

Zogheib moves to amend his § 2255 motion.[19]  Habeas petitions may "be amended or supplemented as provided in the rules of procedure applicable to civil actions."[20]  The Ninth Circuit has instructed that when courts consider pro se habeas petitions, the court should "be guided by the underlying purpose of Federal Rule of Civil Procedure 15(a), which was to facilitate decisions on the merits, rather than on technicalities or pleadings."[21]  Under Fed. R. Civ. P. 15(a), courts should "freely give leave [to amend] when justice so requires."  Given this standard and the government's lack of opposition, I grant Zogheib's motion to amend and take into consideration his supplemental arguments.

**B.     Zogheib has not shown a basis to seal his exhibits.**

Zogheib requests that the court issue an order sealing the exhibits that he attached to his motion to amend, which consist of correspondence between Zogheib and his counsel from 2018 and 2019, as well as several other documents.[22]  He asserts that the exhibits are protected by the attorney-client privilege.[23]  But a defendant "impliedly waives his attorney-client privilege the moment he files a habeas petition alleging ineffective assistance of counsel."[24]  I've examined Zogheib's attachments and find that they are relevant to his ineffective-assistance-of-counsel claims.  Zogheib has thus waived his privilege.  And none of the non-attorney-communication

---

[19] ECF No. 280.

[20] 28 U.S.C. § 2242.

[21] *James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001).

[22] ECF No. 281.

[23] *Id.*; *see* ECF No. 280 at 23–57.

[24] *Lambright v. Ryan*, 698 F.3d 808, 818 (9th Cir. 2012) (citing *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) (en banc)).

exhibits Zogheib attaches to his motion—including transcripts from sentencing hearings and Zogheib's own sentencing memorandum—reveal sensitive information that is not already a matter of public record.[25]  So Zogheib's motion to seal is denied.[26]

**C.   Zogheib has not demonstrated that § 2255 relief is available.**

A federal prisoner may attack the legality of his conviction under 28 U.S.C. § 2255 by showing that "the sentence was imposed in violation of the Constitution or the laws of the United States," "the court was without jurisdiction to impose such a sentence," the sentence was in "excess of the maximum authorized by law," or the sentence is "otherwise subject to collateral attack."[27]  If the court so finds, it must "vacate and set the judgment aside and . . . discharge the prisoner[,] resentence him[,] grant a new trial[,] or correct the sentence as may appear appropriate."[28]

Liberally construed, Zogheib's argument is that his trial counsel provided ineffective assistance by failing to: (1) communicate to the government that Zogheib purportedly accepted its binding plea offer; (2) adequately advise Zogheib on various sentencing issues related to entering a guilty plea without a plea deal; (3) investigate and utilize testimony from potential witnesses during the sentencing hearing; (4) assert certain defenses; and (5) object to the court's calculation of Zogheib's criminal history during the resentencing hearing.[29]  The right to counsel

---

[25] *See* ECF Nos. 185, 186, 218.

[26] This issue may also be considered moot, given that Zogheib filed the exhibits as attachments to his unsealed motion to amend.  Thus, Zogheib's exhibits are already a matter of public record viewable on the docket of this case.

[27] 28 U.S.C. § 2255(a).

[28] *Id.* at § 2255(b).

[29] ECF No. 280 at 4–10.  To the extent that Zogheib attempts to raise IAC claims related to his appellate counsel, he provides no discernable arguments or support for such claims.  I summarily

embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[30] Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance.'"[31]  In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[32] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[33]  Both prongs of the *Strickland* inquiry must be satisfied to establish constitutionally ineffective assistance of counsel; a failure to satisfy either requires that the petitioner's claim be denied.[34]  Federal courts need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong."[35] Conversely, courts "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[36]

---

deny any IAC claims purportedly based on the ineffective assistance of Zogheib's appellate counsel.

[30] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[31] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[32] *Strickland*, 466 U.S. at 690.

[33] *Id.* at 694.

[34] *Id.* at 697.

[35] *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir.), *cert. denied*, 525 U.S. 839 (1998).

[36] *Strickland*, 466 U.S. at 697.

### 1. Zogheib's first IAC claim fails because he has not shown that counsel deficiently failed to communicate with him about a plea agreement.

In his first IAC claim, Zogheib asserts that his counsel provided ineffective assistance by allegedly failing to communicate to the government that Zogheib purportedly accepted its binding plea offer.[37]  Defense counsel has the duty to communicate formal plea offers from the prosecution with terms and conditions that may be favorable to the accused.[38]  "When defense counsel allow[s] the offer to expire without advising the defendant or allowing him to consider it," defense counsel's failure may serve as the factual basis for a valid IAC claim.[39]  It follows that failing to communicate a defendant's acceptance of a formal plea offer with a fixed expiration date to the prosecution before the offer expires may constitute deficient performance.[40]

Zogheib fails to satisfy the deficient-performance prong of his first IAC claim because his argument is premised upon a demonstrably false assertion.  Zogheib theorizes that his counsel's performance was deficient because the counsel allegedly failed to relay Zogheib's acceptance of the government's formal plea offer.[41]  However, this argument is premised upon Zogheib's false assertion that the government's plea offer had not expired before Zogheib

---

[37] ECF No. 280 at 4–5.

[38] *Missouri v. Frye*, 566 U.S. 134, 145 (2012).

[39] *Id.*

[40] *See id.*

[41] ECF No. 280 at 17.

accepted it.[42]  And the record demonstrates that Zogheib knew the government's offer had already expired before he allegedly accepted it.[43]

The government extended its plea offer with a fixed expiration date one week from August 7, 2018.[44]  Zogheib asserts that he signed the government's formal plea offer and mailed it to his counsel on October 17, 2018.[45]  The government asserts that it declined to reopen its expired plea offer because it had expended extensive effort and resources to prepare for trial by that point.[46]  And less than one week before trial, during a change of plea hearing on October 25, 2018, Zogheib admitted that his counsel communicated the government's formal plea offer to him before Zogheib outright rejected it:

> The Court: Has the government presented any plea offers to [Mr. Zogheib]?
>
> The Government:  Yes, Your Honor.  I guess the best one would be if—did you want that record?
>
> The Court: I don't need to know the details.  I just need—did you, in fact, present some plea offers?
>
> The Government: Yes, Your Honor.
>
> The Court: All right.  And did—you conveyed that to [Zogheib's counsel]?
>
> The Government: Yes.
>
> The Court: All right.  And [defense counsel], is that true?

---

[42] *Id.* at 4–5.

[43] ECF No. 218 at 59–60; ECF No. 219 at 17–18.

[44] ECF No. 195-3 at 2.

[45] ECF No. 280 at 17.

[46] ECF No. 288 at 6.

> Defense counsel: Yes, Your Honor.  Plea agreements were extended.  Discussions were had.  We could not reach agreement on certain issues very important to my client.
>
> The Court: Okay.  And you discussed those plea offers and presented those to Mr. Zogheib?
>
> Defense counsel: Yes.  He's had them in writing.  The government placed all those offers in writing.
>
> The Court: All right.  Mr. Zogheib, without telling me the details, did you, in fact, have discussion with [your counsel] about the government's plea offers?
>
> Zogheib: Yes, I did.
> The Court: And you rejected those plea offers; is that right?
>
> Zogheib: Yes.  Yes, Your Honor.[47]

One year later, at the sentencing hearing on October 16, 2019, Zogheib admitted that he did not accept the government's plea offer before it expired.[48]

In sum, Zogheib's decisions—not any inaction on the part of his counsel—led him to lose the government's plea offer.  Zogheib admitted to the court that his counsel communicated the government's formal plea offer to him with its fixed expiration, he initially rejected the offer, and, ultimately, Zogheib failed to accept the offer before it expired.[49]  So Zogheib's first IAC claim fails as a matter of fact and law, and I deny relief on that claim.

---

[47] ECF No. 219 at 17–18.

[48] ECF No. 218 at 59–60 (Zogheib explaining that he signed and returned a copy of the government's proposed binding plea deal to his counsel before the calendar call on October 18, 2018, but the government would not accept it as it was after the government's deadline).

[49] ECF No. 219 at 17–18; ECF No. 218 at 59–60.

    **2.**      ***Zogheib's second IAC claim fails because he has not shown that his counsel deficiently informed him about various sentencing consequences of entering a guilty plea without a deal, or that counsel's performance prejudiced Zogheib.***

In his second IAC claim, Zogheib asserts that his counsel provided ineffective assistance by allegedly failing to adequately advise him on various sentencing issues related to entering a guilty plea without a plea deal.[50]  He argues that his counsel's advice led him to believe that he would receive partial credit on his federal sentence while he was serving time on a separate state sentence because the two sentences would run concurrently, but it turned out that wasn't the case.[51]  Zogheib fails to satisfy the deficient-performance and the prejudice prongs of this claim.

With respect to the deficient-performance prong, an attorney's inaccurate prediction of what sentence a defendant will receive upon pleading guilty, without more, does not demonstrate that the attorney's performance fell below an objective standard of reasonableness.[52]  Here, because Zogheib merely argues that his counsel's performance was deficient due to an alleged inaccurate prediction of the sentence the court would impose, he fails to demonstrate that his counsel's performance fell below an objective standard of reasonableness.  And a defendant does not suffer prejudice from his attorney's inaccurate prediction of what sentence he would receive upon pleading guilty when, "prior to accepting the guilty plea, the court explains that the discretion as to what the sentence would be remained entirely with the court."[53]  At Zogheib's change-of-plea hearing, the court expressly advised him that his counsel's sentencing predictions have no effect on the court:

> The Court: Has anyone made any promise to you as to what sentence will be imposed against you?

---

[50] ECF No. 280 at 7, 8.

[51] *Id.* at 8.

[52] *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990).

[53] *Id.*

Zogheib: No.

The Court: Has your attorney explained to you about the sentencing guidelines and how he believes they may affect your sentencing?

Zogheib: Yes, he did.

The Court: In deciding your sentence in this case, Judge Hicks is obligated to calculate the applicable sentencing guideline range under the sentencing guidelines.  Do you understand that?

Zogheib: Yes.

The Court: After considering that guideline range, Judge Hicks is also required to consider any variances or departures, upwards or downwards from that range.  Do you understand that?

Zogheib: Yes.

The Court: In determining the appropriate punishment, the judge can consider any relevant conduct you've engaged in, including any prior criminal history you may have.  Do you understand that?

Zogheib: Yes.

The Court: The guidelines are only advisory.  While the judge has to consult them, he doesn't have to follow them.  Do you understand that?

Zogheib: Yes.

The Court: *And, so, while you and your attorney may have in mind some particular sentencing range or some particular sentence, Judge Hicks may decide that some different sentence is more appropriate.  Do you understand that could happen?*

Zogheib: *Yes.*

The Court: If he sentences you to something that you're not expecting or not anticipating, that would not give you the right to withdraw your guilty plea.  Do you understand that?

Zogheib: Yes.

1
2
3
4

The Court: And again, I have no idea what Judge Hicks would impose. I'm sure he doesn't know yet either. He needs a lot more information. But in the event [that] he for some reason imposes the maximum prison sentence and the maximum fine and the maximum supervised release term and all of that, that would not give you the right to withdraw your guilty plea. You understand all that?

5

Zogheib: Yes.[54]

6    Zogheib confirmed at his change-of-plea hearing that he knew his counsel's

7  representations about his likely sentence and any sentencing calculations were only suggestions,

8  and that the court had discretion to impose any legal sentence it wished. And, in his motion,

9  Zogheib also admits to knowing, before pleading guilty, that he likely would not receive pretrial

10 credit for time served in state prison.[55] So Zogheib's IAC claim concerning his counsel's

11 sentencing predictions fails as a matter of law, and I deny relief on this claim.

12
13

### 3.    Zogheib's third IAC claim fails because he has not shown that counsel deficiently failed to utilize potential witness testimony during sentencing or that he was prejudiced as a result.

14    In his third claim, Zogheib asserts that his counsel failed to investigate and utilize

15 testimony from potential witnesses during his sentencing hearing.[56] He argues that his counsel

16 should have retained the services of sentencing-mitigation specialist Tess Lopez to testify on his

17 behalf. Zogheib also contends that his counsel should have elicited the testimony of the doctor

18 who authored a report concerning Zogheib's "diminished mental capacity" resulting from

19
20
21
22
23

---

[54] ECF No. 219 at 19–21 (emphasis added).

[55] ECF No. 280 at 5.

[56] *Id.* at 7–8.

13

various childhood experiences that "le[ft] scars and PTSD symptoms."[57]  Zogheib asserts that these witnesses could have influenced "the outcome of the sentence" that the court imposed.[58]

"Defense counsel has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'"[59]  This includes "a duty [to] adequately . . . investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict."[60]  But "the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed."[61]  "A claim of failure to interview a witness . . . cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel."[62]  "When the record clearly shows that [defense counsel] was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails."[63]  Finally, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.[64]

Zogheib doesn't satisfy the deficient-performance prong of his third IAC claim.  He fails to sufficiently identify any new information that his counsel would have gained or used from the testimony of either witness that he advances here.  Zogheib's counsel provided the court with

---

[57] *Id*. at 7.

[58] *Id.* at 8.

[59] *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting *Strickland*, 466 U.S. at 691).

[60] *Id.* (citing *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999)).

[61] *Id.* (quoting *Hendricks v. Calderon*, 70 F.3d 1032, 1050 (9th Cir. 1995)).

[62] *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) (cleaned up).

[63] *Bragg*, 242 F.3d at 1088 (citing *Eggleston*, 798 F.2d at 376).

[64] *Eggleston*, 798 F.2d at 376.

two extensive sentencing memoranda that raised the sentencing arguments that Zogheib now reiterates in his motion.[65]  Zogheib doesn't identify what additional information his counsel should have elicited from the doctor's testimony, considering that the court did receive the doctor's report at the sentencing hearing.  He merely speculates that the two witnesses he briefly highlights could have justified findings and influenced the outcome of the sentencing.  Without more, Zogheib fails to demonstrate that his counsel's decision not to call those witnesses was objectively unreasonable under prevailing professional norms.

Nor does Zogheib show that he was prejudiced by counsel's decision not to call the witnesses.  His central point of contention is based on his displeasure with the court's decision to grant the government's request for an upward variance during sentencing, inferring that if his counsel had called other witnesses, the court would have come to a different decision.[66]  But the court's decision to grant an upward variance was based on Zogheib's lengthy, serious criminal history as a career fraudster.[67]  When imposing a sentence, the court has discretion to grant an upward or downward variance based upon a defendant's characteristics and history.[68]  As the court explained in a prior order, "[t]he government has provided substantial evidence that demonstrates . . . Zogheib defrauded his victims out of" their funds as alleged by the government.[69]  And at sentencing, the court considered the psychologist's report but was more swayed by Zogheib's "continuous and repeated pattern of criminal behavior" when deciding the

---

[65] *Compare* ECF Nos. 185, 194, 195, 196 *with* ECF No. 280.

[66] *See generally* ECF No. 280.

[67] *See* ECF No. 220 at 7.

[68] *See Gall v. United States*, 552 U.S. 38, 51 (2007); *Irizarry v. United States*, 553 U.S. 708, 713–16 (2008).

[69] ECF No. 220 at 5.

appropriate sentence.[70]  Judge Hicks noted that then-current guideline calculations "grossly understated" Zogheib's criminal history and expressed that said history "certainly does define the defendant."[71]  He went through the series of misdemeanor and felony convictions Zogheib has accumulated, explaining that the many felony convictions based on fraudulent conduct that Zogheib had racked up over the years "speaks to the character of this defendant."[72]  Given Zogheib's lengthy history of fraud, combined with the strength of the government's case against him, Zogheib fails to demonstrate a reasonable probability that, but for his counsel's decision not to call the witnesses Zogheib identifies in his motion, the result of the sentencing hearing would have been different.  Zogheib's third IAC claim thus fails.

### 4.  *Zogheib's fourth IAC claim fails because he has not shown that his counsel deficiently failed to raise a statute-of-limitations or prosecutorial-bias defense.*

In his fourth IAC claim, Zogheib asserts that his counsel provided ineffective assistance by failing to raise a statute-of-limitations or prosecutorial-bias defense.[73]  When applying the deficient-performance prong of an IAC claim to an allegation that counsel provided ineffective assistance by failing to file a motion, the petitioner must show that the motion would have been meritorious and that the failure to file it fell below an objective standard of reasonableness.[74]  The "failure to make a futile motion does not constitute ineffective assistance of counsel."[75]  And, in the context of a conviction by guilty plea, a petitioner must show "a reasonable

---

[70] ECF No. 218 at 103.

[71] *Id.* at 109, 115.

[72] *Id.* at 120.

[73] ECF No. 280 at 8, 10.

[74] *Moore v. Czerniak*, 574 F.3d 1092, 1101 (9th Cir. 2009) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 382 (1986)).

[75] *James v. Borg,* 24 F.3d 20, 27 (9th Cir. 1994) (cleaned up).

1  probability that, but for counsel's [failure to file a meritorious motion], he would not have [pled]

2  guilty and would have insisted on going to trial."[76]

3  Zogheib has not shown that his counsel's failure to bring these motions was deficient or

4  influenced his decision to plead guilty.  Zogheib takes issue with his counsel's decision not to

5  move for dismissal of the indictment because it relied on criminal conduct that occurred outside

6  of the statute of limitations.[77]  But the record establishes that one of Zogheib's prior attorneys did

7  file such a motion, and it was denied.[78]  So counsel did not act deficiently by choosing not to

8  refile the same motion that had already been rejected by the court—doing so would have been

9  futile.[79]

10  Zogheib also challenges his counsel's decision not to file a motion to disqualify the

11  Assistant United States Attorney (AUSA) prosecuting Zogheib on the basis that the AUSA had

12  an alleged bias against Zogheib stemming from a previous state-court case he had previously

13  pursued against Zogheib while employed by the state.[80]  Zogheib fails to argue—let alone

14  show—that a motion to disqualify the AUSA would have been meritorious, the failure to file it

15  fell below an objective standard of reasonableness, or a reasonable probability existed that

16  Zogheib would not have pled guilty and instead insisted to go to trial if such a meritorious

17  motion was filed.  So Zogheib has not shown that his counsel provided ineffective assistance of

18  counsel by failing to file motions raising a statute-of-limitations or prosecutorial-bias defense.

19

20

---

21  [76] *Premo v. Moore*, 562 U.S. 115, 129 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

  [77] ECF No. 28 at 8.

22  [78] ECF No. 32 at 6–9; ECF No. 52.

23  [79] *See Borg*, 24 F.3d at 27.

  [80] ECF No. 280 at 11.

**5.      *Zogheib's fifth IAC claim fails because he has not shown that his counsel deficiently failed to object to the court's criminal-history calculation at sentencing or that any such failure prejudiced his ultimate sentence.***

In his fifth IAC claim, Zogheib asserts that his counsel provided ineffective assistance by allegedly failing to object to the court's calculation of his criminal history during his sentencing and resentencing hearings.[81]  A sentence imposed by a court is substantively reasonable when the court properly considered the 18 U.S.C. § 3553(a) factors under the totality of the circumstances and the sentence is "sufficient, but not greater than necessary."[82]  Section § 3553(a) requires that the sentencing court ensure the sentence imposed properly considers, among other factors, (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense and promote respect for the law; (4) the need to afford adequate deterrence; and (5) the need to avoid unwarranted sentencing disparities.[83]  Courts have discretion whether to grant an upward or downward variance based on a particular defendant's characteristics and history.[84]

At Zogheib's first sentencing hearing, his counsel did in fact object to the government's request for an upward variance, and the court overruled that objection.[85]  Zogheib then filed a motion to correct his sentence, arguing that the grounds upon which the court granted the government's request for an upward variance were based upon unsubstantiated facts and unsupported by law.  The court denied that motion, reiterating Zogheib's "lengthy history of fraud" (including more than "fifteen felony and misdemeanor convictions for some type of fraud

---

[81] ECF No. 280 at 10–11.

[82] *United States v. Carty*, 520 F.3d 984, 994–95 (9th Cir. 2008) (en banc).

[83] 18 U.S.C. § 3553(a).

[84] *See Gall*, 552 U.S. at 51; *Irizarry*, 553 U.S. at 713–16.

[85] ECF No. 185 at 10–15; ECF No. 186 at 33–37; ECF No. 218 at 69–73, 92–126.

that span his entire adult life"), the increased amounts of money he stole as he got older, and the "extraordinarily lenient" punishments he had received for his previous convictions as justifications for the upward variance.[86]   The court detailed those convictions, Zogheib's lack of remorse, and his numerous probation violations in his prior federal case as evidence that Zogheib "has no respect for either the court system or the laws of Nevada or the United States."[87] Because "[m]onetary fines, short periods of incarceration, and even longer prison sentences have not deterred him," the court denied Zogheib's motion to reduce his sentence because the sentence was justified by all of these facts.[88]

When Zogheib appealed his original sentence and order of restitution, the Ninth Circuit addressed "Zogheib's argument that the [court] allegedly relied on facts outside of the record" when it denied his motion to correct his sentence.[89]   The Ninth Circuit determined that Zogheib's argument was without merit because the facts upon which the court relied in denying Zogheib's motion were disclosed in the presentence-investigation report, and the court highlighted the same conduct at Zogheib's sentencing hearing.[90]   The Ninth Circuit reversed only the court's loss calculation, which required reconsideration of Zogheib's sentence because the sentencing guidelines dictate that sentencing ranges be determined by the proper loss amount.[91]

At Zogheib's resentencing hearing, Zogheib's counsel—a different attorney from the one who represented Zogheib during his original sentencing hearing—requested a downward

---

[86] ECF No. 220.

[87] *Id.* at 8.

[88] *Id.* at 9.

[89] *Zogheib*, 843 F. App'x at 73.

[90] *Id.*

[91] *Id.*

1  variance due to health concerns.[92]  Conversely, the government requested that the court re-

2  impose the original upward variance, again based on Zogheib's criminal history.[93]  The court

3  granted the government's request and imposed the same 96-month sentence, referencing its

4  previous findings in the order denying Zogheib's motion to correct his sentence.[94]

5          When Zogheib appealed the result of his re-sentencing and new order of restitution, he

6  argued that the court "erred by granting the government's request for an upward variance based

7  on his understated criminal history."[95]  The Ninth Circuit rejected that argument:

> The district court considered all the § 3553(a) factors and
> explained at length why Zogheib's criminal history was "grossly
> understated by the . . . guideline calculations."  In granting the 39-
> month upward variance, the court found that Zogheib
> "characteristically has little respect for the law, and that's certainly
> reflected by these fraudulent misdemeanor and felony
> convictions," which the court recounted in detail at the [original]
> sentencing hearing.  We conclude that the court did not abuse its
> discretion by imposing a sentence of 96 months' imprisonment.[96]

13          In short, Zogheib's concerns regarding the upward variance have been presented to and

14  considered by the court within the context of the § 3553(a) factors.  The court granted the

15  government's request for an upward variance based on Zogheib's criminal history over the

16  objection of Zogheib's counsel during the original sentencing hearing, and the court has twice

17  been affirmed by the Ninth Circuit on this issue.  Zogheib thus fails to satisfy the deficient-

18  performance prong of his fifth IAC claim because he fails to show that his counsel's decision not

19  to raise a meritless objection to the court's calculation of his criminal history during the

---

[92] ECF No. 267 at 16–17.

[93] *Id.*

[94] *Id.* at 27–28.

[95] *Zogheib*, 2022 WL 15798663, at *2.

[96] *Id.*

20

resentencing hearing fell below an objective standard of reasonableness.  And he fails to satisfy the prejudice prong because he has not shown that a reasonable probability existed that, but for his counsel's alleged failure to object, the result of the resentencing hearing would have been different.  So I find that Zogheib's fifth IAC claim does not warrant relief.

### 6.      The court will not issue a certificate of appealability.

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.[97]  When "the district court has rejected the constitutional claim on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[98]  Because Zogheib has not shown that my merits assessment of his IAC claims is debatable or wrong, I deny him a certificate of appealability on all claims.

### 7.      No evidentiary hearing is warranted.

Zogheib requests an evidentiary hearing on his § 2255 motion.  A "district court may deny a § 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.[99]  As discussed in detail *supra*, Zogheib's claims, when viewed against the record, do not warrant relief and are so patently frivolous as to warrant summary dismissal.  An evidentiary hearing is thus unnecessary for the court to conclude that Zogheib's motion must be denied.

---

[97] 28 U.S.C. § 2253(c).

[98] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

[99] *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989).

**D.      Zogheib is not entitled to a sentence reduction under Sentencing Guideline Amendment 821.**

Zogheib moves for a sentence reduction based on recent changes to the sentencing guidelines known commonly as Amendment 821.[100]  The Federal Public Defender's office, appointed under General Order 2023-9, filed a notice of non-eligibility, concluding that Zogheib does not qualify for a sentence reduction under that amendment.[101]  After careful review, I agree that Zogheib is not eligible for a sentence reduction under Amendment 821, and I deny his motion.

A court may reduce a defendant's sentence if his "term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o) . . . after considering the factors set forth in section 3553(a) . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[102]  The Sentencing Commission submitted criminal-history amendments to Congress in May 2023, they took effect in November, and courts began applying them retroactively this February.[103]

The Amendment is bifurcated into two parts: the first "limits the overall criminal history impact of 'status points'"—additional criminal-history points given to a defendant who committed his offense while under a criminal-justice sentence; the second provides a two-level

---

[100] ECF No. 283.

[101] ECF No. 287 (notice of non-eligibility).

[102] 18 U.S.C. § 3582(c)(2).

[103] Sent'g Guidelines for U.S. Courts, 88 Fed. Reg. 60534, 60534 (Septe. 1, 2023).

decrease to a defendant's criminal-history total under various circumstances.[104]  Zogheib doesn't

specify which part he believes applies to his sentence, so I analyze both.[105]

Part A of Amendment 821 limits the criminal-history impact of status points under

U.S.S.G. § 4A1.1.  Prior to the amendment, a "defendant who committed the instant offense

while under any criminal[-]justice sentence, including probation, parole, supervised release,

imprisonment, work release, or escape status," received two additional criminal-history points.

Amendment 821 eliminates those additional status points for any defendant who otherwise has

six or fewer criminal-history points, and reduces the points from two to one for defendants who

have seven or more criminal-history points.  This portion of Amendment 821 doesn't apply to

Zogheib's final sentence because he didn't receive any status points for committing the offenses

underlying his conviction while under a criminal-justice sentence either.  In other words,

Zogheib isn't entitled to a status-point reduction because he didn't receive any status points to

begin with.  So relief is not available to him under Part A.

Part B of Amendment 821 reduces the offense level of certain zero-point offenders (i.e.,

defendants with no criminal history) whose crime did not involve specific aggravating factors.[106]

But Zogheib is not a zero-point offender—he had five criminal-history points—so Part B does

---

[104] *Id.*

[105] Zogheib also raises several issues that are irrelevant to Amendment 821, like his oft-repeated lament about the BOP's calculation of his pretrial custody credits and appeals to the "extraordinary and compelling reasons" test for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  *See* ECF No. 283 at 3, 5.  Neither of those issues are within Amendment 821's scope, so I don't address them here.  And since Zogheib raises substantially similar arguments in his later-filed motion for a sentence reduction and compassionate release, *see* ECF No. 287, I address them in that context *infra*.

[106] U.S. Sent'g Comm'n Guidelines Manual § 4C1.1 (U.S. Sent'g Comm'n 2023).

not apply to his sentence.[107]  The amendment also doesn't apply to defendants who "personally cause[d] substantial financial hardship," which Zogheib plainly did.  So because Zogheib isn't eligible for a sentence reduction under either part of Amendment 821, I deny his motion.

**E.    A compassionate-release motion is the wrong vehicle for Zogheib's BOP-calculation dispute, and he hasn't shown extraordinary and compelling reasons for such relief.**

Zogheib also moves for modification of his sentence and compassionate release.[108]  He bases his modification arguments on his concerns about the BOP's calculation of his sentence, arguing that the BOP should have credited him for time served in state prison.  He argues that he is entitled to compassionate release on the basis of family circumstances:

> [T]he grief of losing his wife of 20 years, who passed away in 2017, rendering his 'minor' children at the time destitute, the passing of his mother, his mother in law, and his father in law, then the sexual assault of his daughter while she was still a minor, and all the trauma his son started to endure following the sentencing of [Zogheib], and the struggles of [Zogheib] to continue his parenting duties from behind bars since 2016 till present day.[109]

### 1.    *Zogheib's request to modify his sentence cannot be brought as a compassionate-release motion.*

Within his motion for compassionate release, Zogheib attempts to challenge the BOP's calculation of his sentence.[110]  Zogheib argues that the BOP failed to credit him for the time he served in state custody for state-court convictions prior to his sentencing in this federal case.[111]

---

[107] *See* ECF No. 267 at 9 (re-sentencing transcript in which the court notes that Zogheib has five criminal-history points).

[108] ECF No. 289 at 8.

[109] *Id.* at 13.

[110] *Id.* at 7–12.

[111] *Id.*

1    Zogheib asserts that he should have been credited for the time because the factual basis of his

2    state conviction included conduct allegedly relevant to the federal counts against him.[112]

3          This argument has been considered and rejected by this court and the Ninth Circuit.[113]

4    But even if it hadn't, a motion for compassionate release in this court is not the proper vehicle to

5    challenge the BOP's calculation.  Because "[a] prisoner's claim of credit for time spent in

6    custody prior to sentencing addresses the execution of his sentence rather than the sentence

7    itself," the prisoner must challenge that calculation under 28 U.S.C. § 2241 and in the district

8    court whose territorial limits include the prisoner's place of confinement.[114]  Because Zogheib's

9    claim addresses the execution of his sentence and must be filed in the district court with

10   jurisdiction over his place of confinement—a federal correctional institution in Florence,

11   Colorado—this court cannot consider his arguments here.  So to the extent that Zogheib seeks

12   modification of his sentence based on the BOP's calculations, I deny that motion without

13   prejudice to its proper filing in the right court.

14

15   **2.     *The court assumes without deciding that Zogheib exhausted the administrative process for this request.***

16         Turning to Zogheib's motion for compassionate release under 18 U.S.C.

17   § 3582(c)(1)(A)(i), the statute authorizes courts to reduce a defendant's prison term if

18   "extraordinary and compelling reasons warrant [it]" but only "after the defendant has fully

---

[112] *Id.*

[113] *See* ECF No. 220 at 3, 5–7; *Zogheib*, 843 F. App'x at 72–73 (noting that "[t]he conduct in Count Two of the Nevada indictment involved fraud of a different nature than Zogheib's frauds in this case" and determining that "[t]he district court did not clearly err . . . in concluding that the conduct was not relevant").

[114] *See United States v. Espinoza*, 866 F.2d 1067, 1071 (9th Cir. 1991); *United States v. Diggings*, 740 F.2d 770, 771–72 (9th Cir. 1984); *Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir. 1992).

exhausted his administrative rights."  It appears that Zogheib requested administrative relief from the BOP, arguing that his alleged medical condition constituted an extraordinary and compelling reason to warrant a reduction in his sentence.[115]  The BOP denied Zogheib's request on June 30, 2023.[116]  But in his motion before this court, Zogheib argues that his family circumstances—not a medical condition—entitle him to relief.[117]  For purposes of resolving this motion on its merits, I assume without deciding that Zogheib satisfied § 3582(c)(1)(A)'s exhaustion requirement.

### 3. *Zogheib fails to establish that he is eligible for compassionate release.*

To determine whether extraordinary and compelling reasons exist to warrant a reduction in Zogheib's sentence, the court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[118]  Recently, the Sentencing Commission issued guidelines enumerating family circumstances that may qualify as "extraordinary and compelling reasons" for compassionate release:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) [C]ircumstances similar to those listed in paragraphs (3)(A) through (3)(C) . . . involving any other immediate family member

---

[115] ECF No. 289 at 24.

[116] *Id.*

[117] *Id.* at 13.

[118] 18 U.S.C. § 3582(c)(1)(A)(i).

1
2
3
4

  or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.  For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.[119]

5    Neither the § 3553 factors nor these policy statements warrant the extraordinary remedy

6 of compassionate release for Zogheib.  The court previously considered the circumstances of

7 Zogheib's children after his wife passed away, as that event occurred before both of Zogheib's

8 sentencing hearings in this case.  And with those circumstances in mind, the court found that

9 Zogheib's "sentence is sufficient but not greater than necessary to comply with the purposes of

10 sentencing as set forth in § 3553(a)."[120]  Zogheib doesn't provide any new information that the

11 court didn't previously consider, and he gives no reason why his family circumstances should be

12 viewed differently now.

13    The Sentencing Commission's policy statements also don't serve Zogheib.  Zogheib's

14 children are no longer minors, and he does not allege that any of his children are incapable of

15 caring for themselves because of mental or physical disability or a medical condition.  He also

16 does not allege that he is the only available caregiver for any relevant family member identified

17 in § 1B1.13(b)(3).  So, because none of the circumstances Zogheib provides in his motion

18 establishes extraordinary and compelling reasons to warrant a reduction in his sentence, I deny

19 his motion for compassionate release.

20
21
22
23

---

[119] U.S.S.G. § 1B1.13(b)(3).

[120] ECF No. 218 at 34–47, 102–103, 107, 129; ECF No. 267 at 18–28.

**Conclusion**

IT IS THEREFORE ORDERED that Zogheib's motion to amend his § 2255 petition **[ECF No. 280] is GRANTED**.

IT IS FURTHER ORDERED that Zogheib's motion to seal **[ECF No. 281] is DENIED**.

IT IS FURTHER ORDERED that Zogheib's motion to correct, vacate, or set aside his sentence under 28 U.S.C. § 2255 **[ECF No. 279] is DENIED**.  Zogheib is **DENIED** a certificate of appealability.  **The Clerk of Court is directed to enter a separate judgment on the docket reflecting the fact that the Court denies Zogheib's § 2255 motion.  The Clerk of Court is also directed to file this order and the civil judgment in this case and in the related civil case: 2:23-cv-01814-JAD**.

IT IS FURTHER ORDERED that Zogheib's motion for a sentence reduction under Amendment 821 **[ECF No. 283] is DENIED**.

IT IS FURTHER ORDERED that Zogheib's motion for compassionate release **[ECF No. 289] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
June 26, 2024